ISREAL NEAL JONES AND DEREK M. PAYNE *v.*
STATE OF INDIANA.

[No. 476S95. Filed October 7, 1976.]

*Stephen C. Haas,* of Evansville, for appellant Payne, *Thomas G. Krochta, Rice & Vanstone,* of Evansville, for appellant Jones.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

DeBruler, J.—Appellants, Jones and Payne, were convicted of armed robbery (commission of a felony-robbery-while armed) in violation of Ind. Code § 35-12-1-1 (Burns 1975). Jones was sentenced to twenty years imprisonment, Payne to fifteen.

On May 2, 1975, a liquor store in Evansville was robbed by two men, one wearing a bandana-type mask and carrying a pistol, who fled with about thirty dollars and the store owner's shotgun. Police saw two men matching the general description of the robbers flee into a wooded area. A search of this area resulted in appellants' arrests. The bag containing the stolen money was found with Payne; the shotgun was also found in the area. The appellants were returned to the liquor store, where the clerk identified Payne as the robber without the mask.

At trial appellant Jones testified on his own behalf. The errors assigned by both appellants relate to questions and comments by the deputy prosecutor during his cross-examination of Jones.

## I.

After Jones described his arrest, the prosecutor inquired whether, prior to the trial, Jones had ever communicated his assertion of innocence to anyone other than his attorney:

> "Q. Okay, now prior to today at approximately 4:00 o'clock p.m., did you ever come to the Prosecutor's Office and say, hey, I didn't have anything to do with that?
>
> MR. RICE: Well, if it pleases the Court, he is not required to do it under the Constitution of the United States and all existing case law. And I'm going to object to it. He has no duty to do that.
>
> MR. REDWINE: Your Honor, I would certainly think a man facing ten to thirty years . . .
>
>     \*   \*   \*
>
> Q. Have you ever told the police that you had nothing to do with this.
>
>     \*   \*   \*
>
> Q. Well, Mr. Jones, why didn't you come then to the Prosecutor's Office who files the charges and tell us, 'I'm innocent'? Why didn't you do that?
>
>     \*   \*   \*
>
> Q. Mr. Jones, why didn't you go to a newspaper reporter, somebody not connected with the Police Department or the Prosecutor's Office, and say, 'I'm innocent.' Did you do that?
>
>     \*   \*   \*
>
> Q. Mr. Jones, as a reasonable man, a reasonable innocent man facing thirty years in prison, don't you think it made sense to tell somebody you were innocent at the time, some police officer, some prosecutor, some judge. Doesn't that make sense?"

In all Jones was asked a dozen times why he had never told the police, the prosecutor, or the press of his innocence. In response he said that he feared the police and that he doubted whether anyone would have believed him. Counsel for both appellants objected throughout the course of these

questions, and each moved for a mistrial. The trial court overruled the motions. The court admonished the jury several times that appellant Jones was under no duty to assert his innocence, to the police or otherwise, but allowed the prosecutor to pursue this line of questioning.

Appellants argue that this questioning was an improper commentary on Jones' silence, that it suggested to the jury that appellants must prove their innocence, and that it constituted "prosecutorial misconduct." We agree that the questioning was improper.

Appellants attempt to equate the commenting on failure to protest innocence with commenting on an accused's failure to testify, a practice long condemned. *Griffin* v. *California*, (1965) 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106; *Rowley* v. *State*, (1972) 259 Ind. 209, 285 N.E.2d 646; *Keifer* v. *State*, (1932) 204 Ind. 454, 184 N.E. 557. We cannot find the two to be the same. The prosecutor could not have commented on Jones' failure to take the stand, for Jones had done so.

However, we are convinced, in light of *Doyle* v. *Ohio*, (1976)[1] 96 S.Ct. 2240, that use of an accused's post arrest silence to impeach his trial testimony is fundamentally unfair. In *Doyle* the petitioner was arrested, given *Miranda* warnings, and remained silent. At trial he claimed that a narcotics informant had "framed" him. The prosecutor was allowed to cross-examine petitioner as to why he had not explained the "frame-up" to arresting officers. The Court said of the warnings required by *Miranda* v. *Arizona*, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694:

> "Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. See *United States* v. *Hale*, 422 U.S., at 177, 95 S.Ct., at 2137.

---

1. Appellants have brought *Doyle* to the Court's attention as additional authority as provided by Ind. R. Ap. P. 8.4(B).

Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial. Mr. Justice White, concurring in the judgment in *United States* v. *Hale*, 422 U.S., at 182-183, 95 S.Ct., at 2139, put it very well: '. . . when a person under arrest is informed, as *Miranda* requires, that he may remain silent, that anything he says may be used against him, and that he may have an attorney if he wishes, it seems to me that it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony. . . . Surely Hale was not informed here that his silence, as well as his words, could be used against him at trial. Indeed, anyone would reasonably conclude from *Miranda* warnings that this would not be the case.'

We hold that the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." *Doyle* v. *Ohio*, (1976) 96 S.Ct. at 2244-45.

While the Court expressly declined to consider whether a defendant's continued silence after the immediate post-arrest custody and throughout the pre-trial period, 96 S.Ct. 2244 n. 6, we find no difference between the two situations. A defendant who receives *Miranda* warnings is advised that he may remain silent; he is not warned that the right continues only while he is in the custody of the arresting officers. Penalizing the accused for silence before trial is no less punishment for the exercise of a right than penalizing silence at the time of arrest.

We hold that permitting this questioning by the prosecutor was error. The trial court's admonition to the jury that appellant Jones was under no duty to speak was not sufficient to remedy the harm. Appellant Jones' conviction must be reversed.

## II.

Apellant Payne argues that any error in the improper questioning of his co-defendant invalidates his conviction as well. To avail himself of an error a party must both suffer harm to a right he possesses and suffer prejudice to himself as a result. The improper questions put to Jones denied both appellants the right to have irrelevant and prejudicial matter excluded from the jury's hearing. Jones' failure to make unsolicited protestations of innocence has no probative value in determining the guilt of either appellant, yet it may have created in the jurors' minds an inference of Jones' guilt. Anything suggesting Jones' guilt tends to imply Payne's guilt as well, in view of the evidence that there were two robbers and that Jones and Payne were found together.

However, in Payne's case we find this error harmless, although harmless error is not argued by the State. Payne was identified by the liquor store clerk soon after the robbery, and was found by police lying on top of the stolen money. From this evidence we conclude that the improper questions directed to Jones were not a substantial factor contributing to the verdict of Payne's guilt.

## III.

Payne also assigns error to the overruling of his motions for a mistrial during the prosecutor's questioning and argument. The first motion was made during argument on the questions to Jones discussed in section (I) *supra,* after the prosecutor said of Jones:

"MR. REDWINE: He cannot attempt to both hide behind and take advantage of the Fifth Amendment. I have a perfect right to ask him about any statement, any time, anywhere, whether he made them or not, once he takes that witness stand."

Later the prosecutor asked Jones:

"Q. Mr. Jones, you hadn't seen Payne in two years?
A. Right.

Q. Now, have you talked to Payne since this time?

A. Down in jail. That was the first time.

Q. Didn't you ask Mr. Payne, 'Say, tell them that I had nothing to do with this. I'm innocent.' Did you ask him to do that?"

Appellant Payne argues that each of these references constituted an impermissible comment upon his own failure to take the stand. We need not discuss the law applicable to such comments because we do not believe that the jury could have construed either instance as a reference to Payne's silence. The former remark was made concerning Jones only in the heat of the argument over questioning Jones as to his silence; the latter contains nothing which we are able to interpret as a comment on anyone's silence. We find, therefore, that the trial court did not err in overruling Payne's motions for a mistrial.

The conviction of appellant Isreal Jones is reversed and remanded for a new trial; the conviction of appellant Derek Payne is affirmed.

Hunter and Prentice, JJ., concur; Arterburn, J., dissents with statement in which Givan, C.J., concurs.

### DISSENTING STATEMENT

ARTERBURN, J.—I dissent as to the reversal of Jones' judgment. In this case Jones elected to take the stand although a defendant. It is well-settled law that he takes the stand subject to cross examination as any other witness would be. I think a defendant may be asked why he remained silent when he was accused of a crime if he takes the stand to give his side of the case. I find no error in such cross-examination.

Givan, C.J., concurs.

NOTE.—Reported at 355 N.E.2d 402.