Debbie TRICE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–0008–CR–346.

Court of Appeals of Indiana.

April 9, 2001.

Transfer Granted June 28, 2001.

John Pinnow, Greenwood, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Robin Hodapp–Gillman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATTINGLY, Judge

Debra Trice appeals her conviction after a jury trial of Murder. She presents two issues for appeal, which we restate as:

1. Whether statements Trice made to police after being given and waiving her *Miranda* rights were voluntary and admissible at trial; and

2. Whether the State's comments on her post-arrest, post-Miranda silence violated her right to due process under the Fourteenth Amendment of the United States Constitution.

We reverse.

## FACTS

Debra Trice fatally shot Raymond Jones with a shotgun in an Indianapolis north side neighborhood on July 20, 1998. The two knew each other casually, and their relationship was based on the mutual use of crack cocaine. Earlier that day, Trice and Jones had been together using crack cocaine at Trice's mother's house. After Jones left, Trice's mother discovered some jewelry missing. Trice left in her mother's car, with a shotgun, to locate Jones and confront him about the missing jewelry. Trice stopped in Jones's neighborhood and inquired about the location of Jones and three other persons. She arrived at Jones's mother's house and met his brother, Allen. Trice carried the shotgun out of the car toward the Jones house. Allen asked Trice to put the gun away and re-park her vehicle while he woke Jones. She did so. Jones got dressed, exited the residence, and told Allen to "Go on, I can handle it." Allen left the house. Soon thereafter, Allen heard a gunshot, ran back to his house, and found Jones lying in the street in front of their house with a gunshot wound to the chest.

Allen saw Trice drive quickly away, running a stop sign in the process. Eight days later, while homicide detectives were preparing to question her, Trice arranged to surrender to police. Trice was taken into custody, handcuffed and placed in an interrogation room. Trice was read her Miranda rights, and she responded that she understood each of her rights. She then read and signed the waiver form.

Trice told the detectives that she felt guilty "because I killed [Jones]." (R. at 326, 333.) When the detectives asked Trice the details of the shooting, she invoked her right to counsel, responding that she wanted to talk to a lawyer about that part.

## DISCUSSION AND DECISION

### 1. *Voluntary Confession*

 Trice contends that she did not voluntarily waive her right to remain silent, and that her statement was rendered involuntary based on drug intoxication and lack of sleep. Based thereon, she asserts the trial court improperly denied her motion to suppress and abused its discretion when it admitted her statements into evidence. We disagree.

 The decision whether to admit a defendant's statement is within the discretion of the trial court. *Ellis v. State*, 707 N.E.2d 797, 801 (Ind.1999). We will not disturb a trial court's decision absent a showing of abuse of that discretion. *Jackson v. State*, 697 N.E.2d 53, 54 (Ind.1998). Whether Trice knowingly and voluntarily decided to forego her right to remain silent is determined by an inquiry into the totality of the circumstances surrounding the interrogation. *Ellis*, 707 N.E.2d at 801. When reviewing a challenge to the trial court's decision, we examine the record for substantial, probative evidence of voluntariness, and do not reweigh the evi-

dence. *Horan v. State,* 682 N.E.2d 502, 510 (Ind.1997).

Trice argues that her statement was not voluntary, since she asserted her right to remain silent by stating she did not want to talk about Jones' death. A memo from the officer who interviewed Trice indicates Trice said "I don't know. I don't want to talk too much. He was a nice guy." (Transcript of Hearing on Defendant's Motion to Suppress at 23, R. at 311.) She then signed the waiver form and proceeded to talk to police. This statement by Trice was insufficient to invoke her right to remain silent. *See Haviland v. State,* 677 N.E.2d 509, 513–14 (Ind.1997) (defendant's repeated statements of "I'm through with this" during interrogation insufficient to invoke his right to remain silent.)

██ Trice also asserts her statement was involuntary due to her intoxication from the effects of crack cocaine and alcohol. She has the burden of showing under the totality of the circumstances that her consumption of drugs and/or alcohol so affected her that she was deprived of her free and independent will so that the statement was the product of an irrational mind or coercion. *Houchin v. State,* 581 N.E.2d 1228, 1231 (Ind.1991).

██ Trice claimed that she had been drinking and on a several-day crack binge prior to her voluntary surrender. In this situation, intoxication will make her statement incompetent only if it rendered her "not conscious of what she was doing" or produced a "state of mania." *Ellis,* 707 N.E.2d at 802. Intoxication to a lesser degree goes only to the weight to be given to the statement and not its admissibility. *Id.* Detectives described Trice's eyes as red and testified that she looked tired. One of the detectives with significant prior narcotics experience surmised that Trice was coming down from a crack high. The detectives also described Trice as more intelligent and better educated than most suspects similarly situated.

In light of her signed *Miranda* waiver, her voluntary surrender, and the lack of evidence to support her argument that she was intoxicated to the point of giving an involuntary statement, we cannot say there was an abuse of the trial court's discretion in admitting her confession.

### 2. *References to Post–Miranda Silence*

██ Trice contends that the prosecutor's repeated references to her post-*Miranda* silence were prosecutorial misconduct and amounted to fundamental error. Using a defendant's post-*Miranda* silence for impeachment violates the Due Process Clause of the Fourteenth Amendment. *Doyle v. Ohio,* 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); U.S. Const. amend. XIV. The *Doyle* Court noted that *Miranda* warnings give the criminal defendant implicit assurances that his silence will carry no penalty. *Id.* at 618, 96 S.Ct. 2240. "In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Id.* at 619, 96 S.Ct. 2240.

The defendants in *Doyle* were arrested immediately after a drug sting operation involving the use of a confidential informant. They made no statements. At trial, the defendants did not contest the state's version of the events, but instead claimed they were "framed." The prosecutor sought to impeach their exculpatory testimony through repeatedly cross-examining them about why they had not told their story before trial, and why they did not tell police of their innocence upon arrest. The *Doyle* Court determined that use of post-arrest silence for impeachment

purposes was constitutionally impermissible. Indiana courts recognize the rule set out in *Doyle*, and do not allow prosecutors to use a defendant's post-*Miranda* silence as a means of impeachment. *Sylvester v. State*, 698 N.E.2d 1126, 1130 (Ind.1998).

■ The State correctly notes that Trice failed to timely object at trial to the prosecutor's comments, and it asserts this argument is therefore waived on appeal. Where there is no timely objection at trial, an issue is procedurally defaulted and is therefore normally under such circumstances unavailable on appeal. *Townsend v. State*, 632 N.E.2d 727, 730–31 (Ind. 1994). However, a reviewing court may bypass an error that a party procedurally defaults when the error is plain or fundamental. *Id.* We believe the prosecutor's references to Trice's post-arrest silence were fundamental error, and we therefore choose to address that allegation of error.

■ Our supreme court has emphasized the narrow applicability of the fundamental error doctrine, finding it applicable only to situations where there are blatant violations of basic and elementary principles of due process, and the harm or potential for harm cannot be denied. *Taylor v. State*, 717 N.E.2d 90, 93 (Ind.1999). The error must be so prejudicial to the rights of a defendant as to make a fair trial impossible. *Id.* at 94. Its availability as an exception to the waiver rule in post-conviction proceedings is generally limited to deprivation of the Sixth Amendment right to effective assistance of counsel or to an issue demonstrably unavailable to the petitioner at the time of his or her trial and direct appeal. *Id.* However, the fundamental error exception to waiver is not so narrow on direct appeal as it is in a post-conviction action. *Id.*

■ Prosecutorial misconduct may amount to fundamental error. *Stowers v.*

*State*, 657 N.E.2d 194, 198 (Ind.Ct.App. 1995). For prosecutorial misconduct to be fundamental error, it must have subjected the defendant to grave peril and had a probable persuasive effect on the jury's decision. *Ellison v. State*, 717 N.E.2d 211, 213 (Ind.Ct.App.1999). The gravity of the peril turns on the probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety of the conduct. *Id.*

In *Taylor*, an action for post-conviction relief, our supreme court noted that a *Doyle* claim might constitute fundamental error. *Id.* at 93. It found the violation in that case was not fundamental error and was therefore waived by failure to object at trial when the comments were of "marginal significance," *id.*, the State withdrew one of the offensive questions and the jury was admonished by the trial judge that it was to disregard the question, and there was strong evidence of Taylor's guilt.

■ In determining whether a claimed error denies the defendant a fair trial, we consider whether the resulting harm or potential for harm is substantial. The element of harm is not shown by the fact that a defendant was ultimately convicted; rather, it depends upon whether his right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he otherwise would have been entitled. *Townsend*, 632 N.E.2d at 730–31. Our task is to look at all that happened, including the erroneous action, and decide whether the error had substantial influence upon the verdict to determine whether the trial was unfair. *Id.*

In *Townsend*, our supreme court found fundamental error where a verdict instruction was inconsistent with an instruction concerning the elements of the crime. Townsend was charged with the commission of battery on two children, and the

element instruction required the State to prove a touching of both children. But the supreme court noted that

[t]he trial court's verdict form instruction is diametrically opposed to the element instruction. It relieved the State of the need to prove the commission of a battery upon both children as charged. This trial anomaly acted to deny appellant a fair trial and the process that was due to him. This is fundamental error, and because the error is fundamental, we bypass any procedural default to address the substantive merits of the issue. The giving of this instruction was prejudicial error.

632 N.E.2d at 730–31.

Here, Trice admitted to police that she killed Jones, but invoked her right to counsel when asked the details of the shooting. At trial, Trice did not contest her role in Jones' death, but did advance her defense that Jones' death was not an intentional or knowing act. Her post-*Miranda* statements are not inconsistent with her theory of the case.

The State subjected Trice to the following cross-examination:

Q: Ma'am, you shot and killed Raymond Jones didn't you?

A: No, sir, not by—not intentionally.

Q: Well, today is the first time that you've told this story that you've told this jury, it's the first time you've told that; isn't that right?

A: Yes, sir.

Q: And you had an opportunity to talked [sic] to Detective Wallace and you talked to Detective McEvilly about what happened, didn't you?

A: Yes. I wish I hadn't.

(R. at 402.)

Later in the same cross-examination, the following exchange took place:

Q: You didn't stop. You didn't go to try to tell the police the story that you are telling this jury today—

A: No, sir.

Q: —that this was all some big accident?

A: No, sir, I didn't.

Q: And you've never told the police that, have you?

A: Told the police what?

Q: The story that you are telling the jury today, that this was an accident?

A: No, I have never told them. I have never said anything.

Q: Because the fact is, it wasn't an accident, was it ma'am? You were angry at Raymond Jones and you shot and killed him?

A: No, sir. That's not true. I wouldn't—Raymond was not—he wasn't—

(R. at 414.)

The State re-visited the subject at length in closing argument:

Is the defense an accident? And I'll close with this—accidental. When did we hear about accident? Did she tell the officers that when they took her statement? Huh-uh. We heard it for the first time today.... She said she wanted to kill herself because she felt guilty for killing Raymond—voluntary conversation. Isn't that the time when you'd say, "It was an accident. I didn't mean to do it"? Even if you don't think that you would admit something like that to the police, you would at least tell your family.... What do you do when you talk to a police detective if indeed it was an accident? I suspect most of us, people would say, "I didn't mean for it

to happen. It was an accident." Does she say that to the detective? No." (R. at 447, 465.) [1]

In *Allen v. State*, 686 N.E.2d 760 (Ind. 1997), the supreme court found no *Doyle* violation where the defendant's rights had been respected and his detailed admissions deemed voluntary. What distinguishes *Allen* from *Doyle* is that Allen "simply was not silent. Without the defendant's silence being used to suggested that he "silently confessed," there is no *Doyle* violation." *Allen*, 686 N.E.2d at 774. Allen was advised of his rights, made a six-hour long statement, and then invited authorities to give him a polygraph test that he subsequently failed. ·

As it presents a situation analogous to Trice's circumstance, *Jones v. State*, 265 Ind. 447, 355 N.E.2d 402, 403 (1976) offers more guidance. Jones and a co-defendant were convicted of armed robbery after being arrested in the vicinity of the event in possession of the proceeds of the crime. During trial, the state referenced five times Jones' failure to provide a pre-trial statement to authorities. Our supreme court held that "A defendant who receives *Miranda* warnings is advised that he may remain silent; he is not warned that the right continues only while he is in the custody of the arresting officers. Penalizing the accused for silence before trial is no less punishment for the exercise of a right than penalizing silence at the time of arrest." *Jones*, 355 N.E.2d at 405.

▆▆▆▆ In *Bieghler v. State*, 481 N.E.2d 78, (Ind.1985) our supreme court found no *Doyle* violation in a single instance during cross-examination followed by a judicial admonition to the jury. *Bieghler* establishes the Indiana test for harmless error in a *Doyle* circumstance, following *United States v. Massey*, 687 F.2d 1348 (10th Cir.1982). Whether a violation of *Doyle* is harmless involves consideration of the following factors: 1) The use to which the prosecution puts the post-arrest silence, 2) Who elected to pursue the line of questioning, 3) The quantum of other evidence indicative of guilt, 4) The intensity and frequency of the reference, and 5) The availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions. *Bieghler*, 481 N.E.2d at 92.

▆▆▆ We will address the factors in turn. First, the prosecution used Trice's post-arrest silence to directly impeach her testimony at trial. While other challenges to her credibility on the stand did not refer to her failure to make a complete statement to detectives upon her surrender, seven questions posed during cross-examination did. At least one-third of the state's closing argument discusses Trice's failure to relate her story to detectives

---

1. The dissent characterizes these statements as "unnecessary commentary" and as a mere "inquir[y] into the substance of a defendant's voluntary statement." Accordingly, the dissent would find no *Doyle* violation because the prosecutor's statements were not directed to Trice's post-*Miranda* silence. We believe the prosecutor's statements were clearly directed to Trice's silence. For example, the prosecutor's questions of Trice and statements in closing argument include the following: "Well, today is the first time that you've told this story that you've told this jury, it's the first time you've told that; isn't that right?"; "You didn't go to try to tell the police the story that you are telling this jury today ... And you've never told the police that, have you?"; "Did she tell the officers that when they took her statement? Huh-uh. We heard it for the first time today"; and "I suspect most of us, people would say, "I didn't mean for it to happen. It was an accident." Does she say that to the detective? No." As these statements refer only to what Trice did *not* say to the police, they cannot be considered comments on the "substance" of Trice's statement.

upon arrest. Second, the initial reference to her partial post-arrest silence was by her own counsel during the cross-examination of one of the detectives who was discussing the specific starting and stopping points of Trice's first statement. Third, the circumstantial evidence against Trice was undisputed by the defense, with the exception of Trice's *mens rea*. Thus, only the element of intent was left for the jury to determine. There were no witnesses to the shooting. Other than her own admissions, all evidence at trial was circumstantial. Trice's intent became the sole item for the jury's determination. Fourth, the frequency and intensity of the *Doyle* violations were not harmless; there were at least seven references during cross-examination, and the subject dominated the state's closing argument. Fifth, the trial judge did not have an opportunity to address the issue, as defense counsel did not object. The failure to object does not preclude review when such preclusion would deny the defendant "fundamental due process." *Johnson v. State*, 271 Ind. 145, 390 N.E.2d 1005, 1010 (1979).

As such, Trice's claimed *Doyle* violations survive the harmless error analysis provided by *Bieghler* and constituted fundamental error. There were seven references to Trice's post-arrest silence during cross-examination and more in closing argument. These references exceed the frequency and intensity of examples of *Doyle* violations provided as guidance within established Indiana case law. The only issue for the jury's consideration was Trice's intent, and the jury's questions to the trial court indicated the jury was having particular difficulty resolving the intent issue. The prosecutor's improper comments regarding Trice's silence, both on cross-examination and in closing argument, were directed at Trice's assertion that the shooting was accidental and not intentional. In that context, the *Doyle* violations subjected Trice to grave peril and had a probable persuasive effect on the jury's decision.

Reversed.

FRIEDLANDER, J., concurs.

BAILEY, J., dissents.

BAILEY, J., dissenting

I respectfully dissent. The majority correctly asserts that Indiana courts will not permit a prosecutor to use a defendant's post-arrest, post-*Miranda* silence as a means of impeachment, consistent with the rationale of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). *Henson v. State*, 514 N.E.2d 1064, 1066 (Ind.1987). I also agree that an alleged *Doyle* violation is of Constitutional magnitude and may be reviewed under the fundamental error doctrine. *Taylor v. State*, 717 N.E.2d 90, 93 (Ind.1999). However, I disagree that the prosecutor's comments were directed to Trice's post-*Miranda* silence. Rather, the prosecutor commented upon the substance of a post-*Miranda* police statement made by Trice. Thus, there is no necessity to evaluate the prosecutor's conduct under the *Doyle* standard.

Upon surrendering to Indianapolis Police Department officers, Trice did not initially invoke her right to remain silent. She was advised of her rights, including the right to remain silent, signed a waiver form and answered several questions posed by Detective William McEvilly. (R. 317–18, 322, 323.) Trice volunteered that she felt guilty because she killed Jones. (R. 326.) Trice also claimed: "I don't know what happened. I was in the neighborhood. I was there to smoke dope." (R. 332.) Thereafter, Trice invoked her right to counsel and the police interview ceased. At trial, the prosecutor was essentially asking Trice to explain why she did not characterize the shooting as acci-

dental when she initially and voluntarily claimed that she committed the act. Although it is the better practice for a prosecutor to refrain from unnecessary commentary, it is not fundamental error for a prosecutor to inquire into the substance of a defendant's voluntary statement.

While I disagree that the prosecutor's comments must be reviewed under the *Doyle* criteria, such a review would nevertheless fail to reveal reversible error. Under some circumstances, a *Doyle* violation may be harmless error. *Pennycuff v. State*, 727 N.E.2d 723, 729 (Ind.Ct.App. 2000). If we can conclude beyond a reasonable doubt that the error did not influence the jury verdict, the error is harmless. *Id.* (citing *Yurina v. State*, 474 N.E.2d 93, 96–97 (Ind.1985)). As the majority observes, five factors are considered in the harmless error analysis: (1) the use to which the prosecution puts the post-arrest silence; (2) who elected to pursue the line of questioning; (3) the quantum of other evidence indicative of guilt; (4) the intensity and frequency of the reference; and (5) the availability to the trial judge of an opportunity to grant a motion for mistrial or give curative instructions. *Henson*, 514 N.E.2d at 1067.

During cross-examination of Trice, the prosecutor twice referred to her earlier statement to police. Trice acknowledged that she had given a statement and expressed her regret that she had done so. Further, the prosecutor elicited Trice's admission that she availed herself of the opportunity to make a police statement but omitted any reference to the shooting as accidental. In closing argument, the prosecutor referenced the absence of a claim of accident *when they [the police] took her statement.* (R. 447.) (emphasis added). He observed that Trice had ultimately given three conflicting explanations of the shooting. (R. 465.) Taken in context, the prosecutor's comments explored only the breadth of Trice's statement to police, and did not attempt to penalize her subsequent exercise of the right to remain silent.

Moreover, even assuming that these references were impermissible, the quantum of evidence indicative of Trice's guilt is overwhelming. Trice's mother found that her jewelry was missing after Jones had been in her home. Trice admittedly went to Jones's residence in an attempt to retrieve the jewelry. Jones's brother observed Trice arrive at the residence armed with a shotgun; he heard a gunshot and then observed Trice speeding away in her vehicle. Immediately thereafter, Jones was discovered in front of his residence with a gunshot wound to his chest. Trice arranged her own surrender to police, and voluntarily stated that she had killed Jones.

The prosecutor made no comment upon Trice's exercise of the right to remain silent. Assuming arguendo that he had done so, the *Doyle* violation would be harmless error in light of the overwhelming evidence of Trice's guilt. Therefore, I would affirm Trice's conviction of murder.