**Debbie TRICE, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 49S05–0106–CR–313.

Supreme Court of Indiana.

April 30, 2002.

John Pinnow Greenwood, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Robin Hodapp–Gillman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

### Introduction

A jury found Appellant Debbie Trice guilty of one count of murder for the 1998 killing of an acquaintance outside his Indianapolis home. The trial court sentenced her to fifty years in prison.

On direct appeal, the Indiana Court of Appeals reversed, holding that the prosecutor's comments on Trice's post-arrest police interview were fundamental error. *Trice v. State*, 746 N.E.2d 391 (Ind.Ct.App. 2001). The State petitioned for transfer, arguing the Court of Appeals misapplied this Court's precedent on fundamental error. We granted the petition. 753 N.E.2d 17 (Ind.2001).

### Facts and Procedural History

Sometime after midnight on July 20, 1998, Debbie Trice drove her car to the 2800 block of Winthrop Avenue on the Northside of Indianapolis in search of Raymond K. Jones, a crack-smoking acquaintance. She planned to confront him with her suspicions that he had stolen some jewelry from her mother earlier that day. After parking on the wrong side of the street, she got out of the car carrying a shotgun and started walking toward Jones' home. (She later told the jury that she wanted to exchange the shotgun for the jewelry she thought Jones had stolen.)

Before she reached the house, Jones' brother Allen Jones met her and told her to put the shotgun away and park her car on the correct side of the street. Trice said she was looking for his brother and only had the shotgun because she was afraid of the family dogs that sometimes run loose. After she put the shotgun in the car and moved the vehicle, Allen entered the house to fetch his brother. He woke Raymond and told him Trice was outside.

While Raymond was preparing to come out, Allen went back outside to Trice's car and noticed she had the shotgun behind her back as she leaned against the vehicle. When Raymond came out of the house, he said to Allen, "Go on. I can handle it." (R. at 287.) Allen walked away. About two minutes later, he heard a gunshot and ran back toward the house. He saw Trice run a stop sign and drive quickly away. He found Raymond lying on the street. Within thirty minutes, Raymond was pronounced dead of a gunshot wound to the chest.

Over the next several days, Trice made arrangements to turn herself in. At her trial, Indianapolis Police Detective William J. McEvilly testified he first met Trice on July 28, 1998, in an interview room at police headquarters, where he found her lying on the floor handcuffed to a restraining device. After she took a seat, McEvilly said he read her a *Miranda* warning. He testified that she said she understood her rights, and signed a standard release form waiving them.

During the interview, Trice said she was trying to kill herself by smoking crack cocaine because "I feel guilty." (R. at 325–26.) When asked why she felt guilty, McEvilly said she responded, "Because I killed him." (R. at 326.) She complained she had not slept in three days. She also said, "I don't know. I don't want to talk too much. He was a nice guy," (R. at 311–13, 323, 330), and "I can't remember the gun. I don't know what happened." (R. at 333.) When another detective in the

interview room followed up with a question, Trice said, "I want to talk to a lawyer about that part," ending the interview. (R. at 331, 333.) The interview was not recorded electronically, but a typed summary of the interview was prepared by the detectives. It shows she made fifteen separate statements before asking for a lawyer.

Trice testified at trial. During cross-examination, when asked if she shot and killed Jones, she replied: "No, sir, not by not intentionally." (R. at 402.) The deputy prosecutor followed up with another question: "Well, today is the first time that you've told this story that you've told this jury, it's the first time you told that; isn't that right?" (R. at 402.) Later, also during cross-examination, he said: "You didn't go to try to tell the police the story that you're telling this jury today—that this was all some big accident?" (R. at 413–14.)

During closing arguments, the deputy prosecutor asked the jury: "When did we hear about the accident? Did she tell the officer that when they took her statement? [No.] We heard it for the first time today." (R. at 447.) He also told the jury that she could have told the interviewing police detectives or her family that the shooting was an accident but did not, "because she knew what she had done was wrong and she knew it was no accident." (R. at 447–48.)

Trice's counsel did not object to the foregoing statements or comments about her police interview.

### Did the Prosecutor Commit a *Doyle* Violation?

■ The heart of Trice's argument involves comments made by the State during its cross-examination of Trice and during the State's closing argument. These involved questions and comments about why Trice did not describe the shooting as an accident during her initial interview at police headquarters. The key issue is whether those comments by the prosecutor violated Trice's rights under the Due Process Clause of the 14th Amendment.

■ Since Trice did not object at trial to the State's comments about her interview, any error would not generally be available on appeal. *Bedgood v. State,* 477 N.E.2d 869 (Ind.1985).

Trice attempts to hurdle the procedural barrier of waiver by invoking the "extremely narrow applicability" of the doctrine of fundamental error. *Carter v. State,* 754 N.E.2d 877, 881 (Ind.2001). The doctrine allows an appellate court to review an unpreserved error. *Deane v. State,* 759 N.E.2d 201, 204 (Ind.2001).

■ As we noted in *Carter:*

A fundamental error is "a substantial, blatant violation of basic principles of due process rendering the trial unfair to the defendant." It applies only when the actual or potential harm "cannot be denied." The error must be "so prejudicial to the rights of a defendant as to make a fair trial impossible." An appellate court receiving contentions of fundamental error need only expound upon those it thinks warrant relief. It is otherwise adequate to note that the claim has not been preserved.

754 N.E.2d at 881 (internal citations omitted). Trice's contention that a "blatant violation of due process occurred" is sufficiently plausible that we elect to examine it.

Trice's claim rests on *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). In *Doyle,* the Court held that under the Fourteenth Amendment a prosecutor may not use the silence of a defendant who's been arrested and Mirandized to impeach the defendant. *Doyle,* 426 U.S. at

619, 96 S.Ct. 2240. *"Miranda* warnings inform a person of his right to remain silent and assure him, at least implicitly, that his silence will not be used against him." *Anderson v. Charles*, 447 U.S. 404, 407–08, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980). This Court acknowledged the *Doyle* rule the same year. *Jones v. State*, 265 Ind. 447, 355 N.E.2d 402 (1976).

A. Recap of Comments. The State made several references to Trice's failure to tell police detectives the shooting was an accident during her initial interview. (R. at 414.) In closing argument, the State made one additional reference to her failure to tell detectives the shooting was an accident, (R. at 447), and another during its rebuttal. (R. at 465.)

■ Of course, comments about interviews between police and a suspect are hardly forbidden territory. Even *"Doyle* does not impose a *prima facie* bar against any mention whatsoever of a defendant's right to request counsel, but instead guards against the exploitation of that constitutional right by the prosecutor." *Willsey v. State*, 698 N.E.2d 784, 793 (Ind.1998)(quoting *Lindgren v. Lane*, 925 F.2d 198, 202 (7th Cir.1991)).

In fact there is one recognized exception to the *Doyle* rule. In *Pennycuff v. State*, 745 N.E.2d 804, 814 (Ind.2001), we held it was proper to counter Pennycuff's claim that he openly cooperated and answered all police queries by offering testimony from detectives about his "non-responsiveness" to their questions. In *Pennycuff*, the prosecutor elicited testimony refuting Pennycuff's claims and then "moved on." *Id.* "In closing argument, the prosecutor referred only briefly to Pennycuff's failure to explain the calendar entries at his first opportunity. These references were sufficiently related to Pennycuff's claim of co-operation to qualify as rebuttal." *Id.*

B. Distinction Between Silence and Statements. As Court of Appeals Judge L. Mark Bailey noted in his dissent in this case, all of the comments made by prosecutors focused on references to the brief post-*Miranda statements* made by Trice. *Trice*, 746 N.E.2d at 399–400 (Bailey, J., dissenting). During the police interview, Trice said "I feel guilty" (R. at 325–26) and "Because I killed him." (R. at 326.) Most significantly, she also said, "I can't remember the gun. I don't know what happened." (R. at 333.) But at trial, she said the shooting was not done "intentionally," (R. at 402), which prompted the prosecutor to ask her if her characterization of the shooting as an accident was being revealed for the first time. (*Id.*) Trice also said at trial that she recalled additional details about the shooting and that the firearm discharged while she was "moving the gun around." (R. at 415.)

By raising these inconsistencies, the State was employing a legitimate trial tactic. It was comparing her fairly detailed trial testimony with her initial statement to the detectives in which she said "I don't know what happened" and that she couldn't "remember the gun." (R. at 333.)

This situation differs significantly from *Jones*, in which the State repeatedly asked the defendant "why he had never told the police, the prosecutor, or the press of his innocence." 265 Ind. at 449, 355 N.E.2d at 404. In *Jones*, the defendant responded at trial that he did not tell anyone of his innocence and remained silent because "he feared the police and that he doubted whether anyone would have believed him." 265 Ind. at 449, 355 N.E.2d at 404. We held that line of questioning to be "an improper commentary on Jones' silence." 265 Ind. at 451, 355 N.E.2d at 405.

■ The key to *Doyle* is that it protects the defendant from being found guilty simply on the basis of a legitimate choice to

remain silent. We have held that a "defendant's silence after he has been advised of his rights cannot be used to obtain conviction by implying that the silence is rooted in guilty knowledge." *Allen v. State*, 686 N.E.2d 760, 774 (Ind.1997).

██ But while *Doyle* bars the use of a defendant's silence for impeachment, "*Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent." *Anderson*, 447 U.S. at 408, 100 S.Ct. 2180.

The Seventh Circuit confronted a *Doyle* issue similar to the one raised by Trice in *United States v. Scott*, 47 F.3d 904 (7th Cir.1995). *Scott* also involved a prosecutor's comments about a defendant who raised information at trial for the first time, in contrast to his initial police statement. In *Scott*, the defendant waived his *Miranda* rights and told investigators he was in Indianapolis to pick up some illegal drug money. *Scott*, 47 F.3d at 905. But at trial, the defendant testified he was picking up the money for other purposes and only mentioned the drug angle in an effort to convince the money holder to give him the cash. *Id.* at 906.

During cross-examination, the government challenged the defendant's trial version and said, "Now you never mentioned to Special Agent Hinkle this story you're telling us today, did you?" *Id.* During closing arguments, the government again mentioned the omissions and noted that the "most important thing to remember is, we didn't hear that story until he took the stand." *Id.*

The Seventh Circuit noted that "when a defendant speaks to government agents after having received *Miranda* warnings, a prosecutor may impeach the defendant by pointing out the inconsistencies between the story he told to police and the story he tells the jury." *Id.* (citing *Anderson*, 447 U.S. at 404, 100 S.Ct. 2180).

Similarly, Trice waived her rights and made several statements about the evening Jones died before invoking her constitutional right to counsel. The State was attempting to show how her trial testimony about an accidental shooting was inconsistent with her earlier comments that she did not know what happened and could not remember anything about a gun.

As we noted in *Sylvester v. State*, 698 N.E.2d 1126 (Ind.1998), there is "no *Doyle* violation here since he did not exercise his *Miranda* right. Quite simply, the defendant did not remain silent. As we have recently observed, if a defendant does not remain silent, he cannot later claim that the silence was used against him." *Id.* at 1130–31.

Trice had a few important things to say during her interview with the detectives. This did not constitute use of her later decision to stop answering questions. We find no *Doyle* violation here.

### Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.