Larry STOWERS, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 49A02–9411–PC–659.

Court of Appeals of Indiana.

Nov. 16, 1995.

Transfer Denied Jan. 24, 1996.

Susan K. Carpenter, Public Defender, Hope Fey, Deputy Public Defender, Indianapolis, for appellant.

Pamela Carter, Attorney General, Jodi Kathryn Rowe, Deputy Attorney General, Indianapolis, for appellee.

1. Ind.Code 35–42–5–1.

## OPINION

FRIEDLANDER, Judge.

Larry Stowers appeals the denial of his petition for post-conviction relief from his conviction for Robbery,[1] a class A felony, presenting the following issues for review:

I.  Did the prosecutor's attempt to introduce evidence which had been ruled inadmissible constitute fundamental error requiring reversal?

II.  Did the trial court commit fundamental error by requiring Stowers to testify from the defense table?

III.  Was the evidence of identity sufficient to support the conviction?

IV.  Did Stowers receive ineffective assistance of trial counsel?

V.  Did Stowers receive ineffective assistance of appellate counsel?

We affirm.

The facts favorable to the judgment were set forth by our supreme court in Stowers's direct appeal as follows:

"[O]n September 14, 1983, 79 year old Edith Morris was at her Indianapolis home with her 69 year old sister-in-law, Mary Baker. While Mrs. Morris was watching television in her living room, Mrs. Baker called to her from the kitchen that someone wanted to borrow sugar. Mrs. Morris went into the kitchen and saw two black men present. During the five to ten minutes the men were present, one asked Mrs. Morris about yard work and the other, taller, one told Mrs. Morris he had just moved into the neighborhood and his mother wanted to borrow some sugar. Mrs. Morris gave them a cup of sugar.

After the two men left, Mrs. Baker remained in the kitchen while Mrs. Morris went back to watch television. The taller of the two men, identified at trial as Stowers, and another man, returned within a few minutes. Stowers and Mrs. Baker came to the living room door. Mrs. Baker said Stowers wanted to talk to Mrs. Morris. When they returned to the kitchen, Mrs. Baker was hit over the head with a pressure cooker. Stowers then beat Mrs.

Morris with her cane. She put her hands up to protect her face and the blows broke one of her fingers and bruised her hands and arms. He sprayed her face with chemical mace which she kept under the cushion of her davenport. Stowers kept asking for Mrs. Morris' money and car keys. Stowers ransacked the house, grabbed Mrs. Morris' purse and fled." *Stowers v. State* (1987), Ind., 512 N.E.2d 853, 854.

Oral argument in this cause was held at the University of Indianapolis on October 17, 1995.

### I.

Detective Barry Jeffries of the Indianapolis Police Department spoke with Stowers shortly after he was arrested. At Stowers's first trial,[2] Jeffries was prepared to testify that during interrogation, Stowers "shouted that he didn't beat and rob any white women", *Record* at 290, at a time when Jeffries had not disclosed to Stowers the race of the victims. Jeffries's proposed testimony would have been relevant to refute Stowers's claim that he had no knowledge of the crime at the time that he was arrested. When the prosecutor referred to the conversation between Jeffries and Stowers, the defense attorney objected and asked that the jury be excused. Outside the presence of the jury, the defense argued that any statements made to Jeffries were inadmissible because the State had failed to provide such statements in response to Stowers's discovery requests. The court ruled that the statement was inadmissible.

At the second trial, the State again asked Detective Jeffries about his conversation with Stowers. Following a brief discussion, the court ruled that Detective Jeffries could not testify concerning what Stowers had said about the race of the victims, explaining its ruling as follows:

"Information on a robbery, that many days after it occurred, certainly, probably, could have been available. The point I'm making is, the neighborhood, and being that close and through contact of neighbors or his family, he could have been advised that

there was an investigation going on about a robbery of two white women. I don't think that necessarily carries any stigma of guilt. And, I believe it would be very slight; and I don't have to give my reasons. But, that's my thinking on the thing; so I'll sustain the objection." *Record* at 292.

Later, during Stowers's cross-examination, the following colloquy occurred:

"Q. The first time you learned about this robbery was October 13th, 1983, when you were arrested?

A. [Stowers] Yes, it was.

Q. Did you ever hear anything about it on the street?

A. No, I did not.

Q. How did you know the victims were white?

A. I didn't know.

Q. Do you recall making the statement to Detective Jeffries—"

*Record* at 319–20. At this point, Stowers's counsel interposed an objection, which the trial court sustained. Stowers argues upon PCR petition that the prosecutor "purposefully hurled that patently inadmissible evidence into the mix" and that Stowers was "thereby denied due process of law and a fundamentally fair trial." Appellant's Brief at 18. The post-conviction court ruled that Stowers waived this issue because it was available but not presented upon direct appeal.

An error which was not raised upon direct appeal but was ascertainable and available at the time, is waived for purposes of post-conviction relief. *Adams v. State* (1991), Ind., 575 N.E.2d 625. Stowers has framed his argument, however, in terms of fundamental error. "Fundamental error" is error that, if unrectified, would deny a defendant fundamental due process, and is not subject to waiver. *Warriner v. State* (1982), Ind., 435 N.E.2d 562. An error is deemed to be fundamental error if it was "so prejudicial to the defendant that he '*could not* have had a fair trial', [citation omitted], [and] suggests to us an error that pervades the climate of the proceedings below, *viewed as a whole*, de-

2. Stowers's first trial ended in a hung jury. He was convicted following a second trial.

priving the defendant of any realistic opportunity for a fair hearing." *Winston v. State* (1975), 165 Ind.App. 369, 332 N.E.2d 229, 232 [emphasis in original]. In order to invoke this doctrine, it is not enough that a constitutional right is implicated. *Warriner, supra.* Rather, in determining whether fundamental error has occurred, we consider the character of the error and its effect upon the trial as a whole. *Kremer v. State* (1987), Ind., 514 N.E.2d 1068.

■ The interjection of an evidentiary harpoon by a prosecutor has, in certain cases, been considered prosecutorial misconduct rising to the level of fundamental error. *See White v. State* (1971), 257 Ind. 64, 272 N.E.2d 312. In reviewing a claim of fundamental error premised upon an allegation of prosecutorial misconduct, we consider first whether there was misconduct and then whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. *Dean v. State* (1982), Ind., 433 N.E.2d 1172, *supplemented at,* 441 N.E.2d 457, *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1188, 84 L.Ed.2d 335. "The gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision, not the degree of impropriety of the conduct." *Barger v. State* (1992), Ind., 587 N.E.2d 1304, 1310.

■ The prosecutor sought to inform the jury that Stowers had made a statement evincing knowledge of the race of the victims at a time when Stowers claimed that he had no knowledge of the crime whatsoever. An objection was lodged after Stowers was asked about making a statement to Detective Jeffries. The objection was made not only before Stowers responded, but also before the question was finished. While the jury may have inferred that Stowers had made a statement to Detective Jeffries contradicting his claim of no prior knowledge of the crime, such was not the only reasonable inference which could have been drawn. Stowers claims the trial court should have given a curative instruction directing the jury to disregard the question. It is likely, however, that such an instruction would have called attention to the question and would have

been more likely to create the inference of prior knowledge than the question itself.

The evidence proving Stowers's identity as the assailant included unequivocal identification by Mrs. Morris, who viewed the assailant face-to-face for several minutes. In view of the strength of such evidence, we conclude that the prosecutor's question, even assuming it was improper, did not contribute to the verdict. Therefore, the prosecutor's question did not constitute fundamental error and Stowers waived the issue by failing to present it upon direct appeal. *Adams, supra.*

## II.

Before Stowers presented his case-in-chief, the court met with both parties outside of the jury's presence. The court announced: "We've established a new policy; if Mr. Stowers the Defendant, is going to testify, he will do so from Counsel table. I advised you of that; that's our policy, because of congestion around the Court Reporter, and the Jury." *Record* at 302–03. When Stowers was called as a witness, the court informed the jury of the policy as follows: "As a matter of policy the Defendant will testify from Defense table." *Record* at 310–11. Stowers posed no objection. Stowers contends that the trial court committed fundamental error in compelling him to testify from counsel table.

The trial court determined that Stowers waived this issue because it was available but not presented upon direct appeal. As with Issue I, *supra,* Stowers contends that the error was fundamental in nature and thus not subject to waiver. We must first determine whether the trial court erred in directing Stowers to testify from counsel table. Assuming such was error, we then must consider the character of the error and its effect upon the trial as a whole to determine whether it constituted fundamental error. *Kremer, supra.*

■ The trial court has wide discretion in determining the manner in which evidence will be presented at trial. *James v. State* (1993), Ind., 613 N.E.2d 15. The conduct of the trial must be calculated to facilitate ascertainment of the truth, insure fairness, and

obtain economy of time and effort commensurate with the rights of society and the defendant. *Utley v. State* (1992), Ind., 589 N.E.2d 232, *cert. denied,* 506 U.S. 1058, 113 S.Ct. 991, 122 L.Ed.2d 142. In order to gain reversal upon a decision regarding presentation of evidence, a defendant must show not only that the trial court abused its discretion, but also that he was prejudiced by abuse of that discretion. *Id.*

■ Even assuming for the sake of argument that the trial court erred in compelling Stowers to testify from counsel table, Stowers has not demonstrated prejudice. Stowers claims that he suffered prejudice because testifying from counsel table negated the presumption of innocence. Stowers contends, "Without being admonished not to draw negative inferences from the special treatment, the jurors would doubtlessly have thought that Stowers did something wrong or was much too dangerous to move freely like the others." Appellant's Brief at 27. To the contrary, the inference to which Stowers refers was not the only one which the jury may reasonably have drawn. There is no evidence of record that any visible measures were taken at trial consistent with the view that Stowers was extraordinarily dangerous.[3] He was dressed in civilian clothes and was not shackled or handcuffed. There is no indication that extra police officers were present to provide heightened security. There also is no indication that the jury witnessed Stowers entering or leaving the courtroom, or moving about the courtroom, while subjected to security measures beyond what is customary at a criminal trial.

■ In order to prevail, Stowers must show that the court's decision was readily identifiable as reflecting the view that Stowers was a dangerous person. *Cf. Shackelford v. State* (1986), Ind., 498 N.E.2d 382 (in order for constitutional violation to result from defendant attending trial in jail attire, the defendant was required to show that he was compelled to wear the attire and that it was readily identifiable as such). The mere fact that Stowers was treated differently with respect to the position from which he testified did not automatically give rise to the inference of dangerousness so as to undermine the presumption of innocence. *Cf. Marbley v. State* (1984), Ind., 461 N.E.2d 1102 (the court did not abuse its discretion by permitting the defendant to enter and leave the courtroom through a door leading to the lockup area, a door which was not used by the general public, because the record did not indicate that the door was distinguishable from any other courtroom door). The court's comments informing the jury that Stowers would testify from counsel table were neutral in tone and could reasonably have been interpreted to reflect that the practice was not specific to Stowers, but rather was general in nature. Therefore, the decision to require Stowers to testify from counsel table did not constitute fundamental error and the argument was waived. *Adams, supra.*

### III.

Stowers contends that the evidence establishing his identity was equivocal, and thus insufficient to support the judgment.

Upon direct appeal, Stowers claimed the victims' identifications of Stowers as one of the assailants were suspect because he had a conspicuous scar on his face which neither victim recalled having seen. The supreme court rejected the argument, noting among other things that Stowers had testified that he had received the scar in 1984, the year after the attack. Apparently, the record before the supreme court contained a transcription error, because the judge presiding over trial testified at the post-conviction hearing that his trial notes reflected that Stowers testified he had received the scar in 197 4, not 198 4. Stowers contends that the discrepancy requires a "fresh look" at the evidence.

■ The doctrine of *res judicata* precludes the presentation of issues in a post-conviction petition which have previously been decided upon direct appeal. *Harris v. State* (1994), Ind., 643 N.E.2d 309. Stowers

---

**3.** It does appear, however, that the trial court's decision to have Stowers testify from counsel table was based upon the fact that Stowers had

previously threatened the life of his attorney and had threatened to disrupt the trial.

contends that the apparent error in the record before the supreme court upon direct appeal renders the doctrine of *res judicata* inapplicable as to the sufficiency of the identification evidence. Citing *State v. Huffman* (1994), Ind., 643 N.E.2d 899, Stowers contends that the doctrine of *res judicata* may be set aside when the interests of justice demand it. Although the supreme court incorporated the apparently erroneous date into its rejection of Stowers's sufficiency argument, such was not a major component of the analysis. Accordingly, the doctrine of *res judicata* prevents us from revisiting the question. *Daniels v. State* (1988), Ind., 528 N.E.2d 775.

▉▉▉ Even were we to agree that the issue should be re-examined in light of the error, the result would not change. When reviewing the sufficiency of evidence, we neither reweigh evidence nor judge witness credibility, but consider only the evidence favorable to the verdict, together with the reasonable inferences to be drawn therefrom. *Jenkins v. State* (1993), Ind., 627 N.E.2d 789, *cert. denied,* —— U.S. ——, 115 S.Ct. 64, 130 L.Ed.2d 21. Identification by even a single witness is sufficient to support a conviction. *Moore v. State* (1987), Ind., 515 N.E.2d 1099. Morris unequivocally identified Stowers as one of her assailants. While Morris initially stated that her assailant was much taller than Stowers's height, such is not surprising in view of her perspective, i.e., that of an elderly woman viewing a much younger and larger man commencing a violent attack upon her. In any event, Morris's subsequent identifications of Stowers in a photo array, in a line-up, and at trial were unequivocal. The discrepancies in Morris's testimony affect only the weight to be assigned to her testimony and her credibility as a witness. These issues are beyond the scope of appellate review. *Taylor v. State* (1985), Ind., 479 N.E.2d 1310. The same is true with regard to Baker's testimony. Stowers notes that Baker identified another person, and not Stowers, at the line-up. Later, however, Baker, explained that her choice at the line-up was based upon the person's height and that the lighting at the time made it difficult for her to see the faces of those in the line-up. At trial, Baker unequivocally identified Stowers as the assailant. It was the exclusive province of the jury to assess Baker's credibility as a witness and to assign weight accordingly. *Jenkins, supra.*

## IV.

Stowers contends that he received ineffective assistance of trial counsel. Stowers's complaint specifies trial counsel's failure to: 1) object to the court's decision that Stowers would testify from counsel table, as discussed in Issue II, *supra;* 2) request a mistrial after the prosecutor's "evidentiary harpoon", as discussed in Issue I, *supra;* and 3) present these arguments in a motion to correct error.

As with the previous issues, Stowers's failure to present these questions at the earliest opportunity constitutes waiver unless fundamental error occurred. *Tillman v. State* (1987), Ind., 511 N.E.2d 447. Having determined that neither action challenged in Issues I and II constituted fundamental error, we also reject Stowers's argument that failure to present the arguments was fundamental error. The issue of ineffective assistance of trial counsel was waived. *Id.*

## V.

Stowers contends that he received ineffective assistance of appellate counsel in the following respects: 1) Counsel failed to present the issue of ineffective assistance of trial counsel upon direct appeal; 2) counsel failed to effectively argue the issue of insufficient evidence upon direct appeal, and failed to correct the transcription error; and 3) counsel failed to confer with Stowers before filing an appeal and failed to present the issues of testifying from counsel table and the evidentiary harpoon.

▉▉▉ In order to prevail on a claim of ineffective assistance of appellate counsel upon post-conviction petition, a defendant must demonstrate deficient performance which prejudiced him such that he was deprived of an effective appeal. *Collier v. State* (1991), Ind.App., 572 N.E.2d 1299, *trans. denied.* Counsel's performance was not deficient if he failed to present a claim which would have been meritless. *Vaughn v. State* (1990), Ind., 559 N.E.2d 610.

As is true with the claims of ineffective assistance of trial counsel set out above,

Stowers's claim of ineffective assistance of appellate counsel is without merit because he has not prevailed on Issues I, II, or III. The merit of the underlying claims therefore need not be revisited in resolving the issue of ineffective assistance of appellate counsel. Stowers did not receive ineffective assistance of appellate counsel.

Judgment affirmed.

BAKER, J., concurs.

SULLIVAN, J., concurs as to issues I, II, IV and V and concurs in result as to issue III.