Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Aug 10 2012, 8:27 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**HILARY BOWE RICKS**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

RONALD GRAHAM,                          )
                                        )
    Appellant-Defendant,              )
                                        )
      vs.                          )     No. 49A05-1111-CR-618
                                        )
STATE OF INDIANA,                       )
                                        )
    Appellee-Plaintiff.               )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Carol J. Orbison, Judge
Cause No. 49G22-1104-FA-26410

**August 10, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SHEPARD, Senior Judge**

A jury found appellant Ronald Graham guilty on multiple counts arising out of a drug deal gone bad, and the trial court imposed concurrent sentences amounting to thirty years. We affirm.

FACTS AND PROCEDURAL HISTORY

On November 16, 2010, Cory Trotter and a man later identified as Graham met at a gas station in Indianapolis for a marijuana transaction. Trotter got into Graham's car with a bag and digital scales. Graham sat in the driver's seat, and Trotter sat in the front passenger seat.

The two made small talk until Trotter took some marijuana out of his bag. At that point, Graham reached into the back seat, retrieved a pistol, and pointed it at Trotter. Graham said, "[Y]ou know what this is? Don't make no sudden movements." Tr. p. 184. He told Trotter, "[P]ut your hands on the window, this is how I got done, as far as game, this is how you get done." *Id.* Graham also ordered Trotter not to get out of the car. Trotter grabbed for the gun, and the two men fought for control. Trotter got on top of Graham, and as the two men struggled, Graham fired several shots, three of which struck Trotter.

Trotter climbed out through the driver's side door and ran to the gas station's convenience store, leaving his scales and marijuana in the car. He asked people in the store to call the police and an ambulance, and he lay down on the floor. As he lay there, Trotter saw Graham get out of the car and walk away.

The State charged Graham with attempted murder, carrying a handgun without a license, and attempted robbery. Trotter told the police that he had met with Graham to

2

sell him an album cover and repeatedly denied that he intended to sell marijuana. Trotter also lied about the marijuana when Graham deposed him. Two weeks before Graham's trial, Trotter admitted to the State that he had met with Graham to sell marijuana, and the State disclosed Trotter's admission to the defense.

At trial, Graham raised a claim of self-defense. The jury found Graham guilty as charged, and the trial court sentenced him accordingly. This appeal followed.

## ISSUES

Graham raises three issues:

I.      Whether the trial court erred by preventing Graham from cross-examining Trotter about potential criminal penalties he faced for the marijuana deal and for lying about the deal.

II.     Whether the court abused its discretion by allowing the State and its witnesses to refer to Trotter as "the victim."

III.    Whether Graham's convictions for attempted murder and attempted robbery are sustained by the evidence.

## DISCUSSION AND DECISION

### I. Limitation on Cross-Examination

The State filed a motion in limine asking that Graham be barred from asking Trotter whether he was charged with any offenses in relation to the marijuana deal or his subsequent lies about it. During a pre-trial hearing, the court ruled that Trotter could be asked if he was charged with any offenses, but it barred Graham from asking Trotter if he knew what penalties he could have faced. Graham argues that he should have been allowed to question Trotter about penalties. The State asserts that Graham has waived this claim.

3

The general rule on this point is that parties may not place into evidence information about potential penalties. *Debose v. State*, 270 Ind. 675, 389 N.E.2d 272 (1979). One exception to this rule permits such evidence where a testifying witness has received a beneficial agreement with the State in return for testifying, but this exception does not cover a witness who has no deal but testifies in the hope of future leniency. *Seketa v. State*, 817 N.E.2d 690, 694 (Ind. Ct. App. 2004) (citing *Wright v. State*, 690 N.E.2d 1098, 1113 (Ind. 1997)).

Trotter did not have a deal with the State about testifying, and Graham did raise at trial the subject of Trotter's possible criminal penalties. Graham's lawyer did cross-examine Trotter at length about the marijuana deal and about Trotter's subsequent lies under oath about attempting to sell an album cover to Graham. Counsel also asked Trotter if he had been prosecuted for perjury. The jury thus heard evidence of Trotter's misconduct and could have taken it into account in assessing Trotter's credibility. The State is correct that such claim as there might be has not been preserved. *See West v. State*, 755 N.E.2d 173, 184 (Ind. 2001) (determining that the appellant's claim was waived for failing to make an offer to prove).

## II. Referring to Trotter as the Victim

Graham argues that the trial court erroneously permitted the State to refer to Trotter as "the victim" several times during trial over his objection. Graham says that in light of his claim of self-defense, it was the jury's job to identify the assailant and the victim in the fracas, and the prosecutor's references infringed upon the jury's constitutional authority to decide the law and the facts. *See* Ind. Const. article 1, § 19.

4

The trial court has wide discretion in determining the manner in which evidence will be presented at trial. *Stowers v. State*, 657 N.E.2d 194, 198 (Ind. Ct. App. 1995), *trans. denied*. In order to obtain a reversal upon a decision regarding presentation of evidence, a defendant must show not only that the trial court abused its discretion, but also that he was prejudiced by abuse of that discretion. *Id.* at 199.

Here, while questioning law enforcement witnesses, the prosecutor and the witnesses referred to Trotter as the victim on six occasions during the two-day trial. As the Supreme Court noted in *Agee v. State*, 544 N.E.2d 157, 159 (Ind. 1989), however, the word "victim" is not a legal term of art. It can describe anyone who has experienced "an untoward event." *Id.*

The record does not suggest that the State intentionally used the term "victim" in a way particularly calculated to prejudice the jury against Graham. Moreover, Graham had an opportunity to describe himself as the victim and to urge the jury to accept his account of events. It is not apparent that the State's references to Trotter as the victim worked any prejudice, and the trial court did not abuse its discretion by overruling Graham's objection. *See id.* (prosecutor's reference to the decedent as "the victim" not prejudicial because it was inadvertent and unlikely to affect the jury's perception of the defendant).

### III. Sufficiency of the Evidence

When an appellant challenges the sufficiency of the evidence supporting a conviction, we do not reweigh the evidence or judge the credibility of the witnesses. *Joslyn v. State*, 942 N.E.2d 809, 811 (Ind. 2011). We affirm if the probative evidence

and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

Graham argues that his conviction for attempted murder cannot stand because there is insufficient evidence that he intended to kill Trotter. To prove attempted murder, the State was required to prove beyond a reasonable doubt that Graham took a substantial step toward killing Trotter while acting with the specific intent to kill Trotter. Ind. Code §§ 35-41-5-1 (1977), 35-42-1-1 (2007). Use of a deadly weapon in a manner likely to cause death or great bodily harm may suffice to show the requisite intent to kill. *Wilson v. State*, 697 N.E.2d 466, 476 (Ind. 1998).

Here, Graham, surely the initial aggressor, pulled out a gun and pointed it at Trotter. As the two struggled for the gun, Graham fired multiple shots, three of which struck Trotter. Trotter told the jury that one of the shots went off by his ear, and he was trying to avoid being shot in the head. There is ample evidence from which a jury could have reasonably inferred that Graham intended to kill Trotter.

Graham also contends that there is insufficient evidence for his attempted robbery conviction because he says that he did not attempt to take property from Trotter. To prove attempted robbery, the State was required to prove beyond a reasonable doubt that Graham took a substantial step toward intentionally taking property from Trotter by force, resulting in serious bodily injury to Trotter. Ind. Code §§ 35-41-5-1, 35-42-5-1 (1984).

Trotter met with Graham, at a location Graham selected, to carry out a drug deal. Graham had given Trotter a false name. When Trotter revealed the marijuana, Graham

6

produced the pistol, pointed it at Trotter, and ordered him to place his hands on the window and not move. When Trotter tried to disarm Graham, Graham shot him three times. From this sequence of events, the jury could have reasonably inferred that Graham intended to ambush Trotter and take his property rather than complete the drug deal.

## CONCLUSION

Affirmed.

VAIDIK, J., and BARNES, J., concur.