**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 21 2013, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**JOHN A. ENGLAND**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DIONNE E. STEWART,              )
                               )
    Appellant-Petitioner,      )
                               )
      vs.                   )    No. 49A02-1210-PC-787
                               )
STATE OF INDIANA,              )
                               )
    Appellee-Respondent.       )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt M. Eisgruber, Judge
Cause No. 49G01-0810-PC-249157

**May 21, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Petitioner, Dionne Stewart (Stewart), appeals the post-conviction court's denial of his amended petition for post-conviction relief.

We affirm.

## ISSUES

Stewart raises two issues for our review, which we restate as:

(1) Whether the trial court erred in allowing the State to amend the charging Information to add an habitual offender count more than ten days after the omnibus date had passed; and

(2) Whether Stewart's appellate counsel provided ineffective assistance of counsel.

## FACTS AND PROCEDURAL HISTORY

We reviewed the factual background in the direct appeal of this case as follows:

[O]n September 28, 2007, T.R., a recovering cocaine addict, walked to a friend's house at around noon where she relapsed in her recovery and smoked crack cocaine with her friend until approximately 4:00 p.m. T.R. stayed at her friend's house talking and playing cards until the early morning hours of September 29, 2007. T.R. and another woman were sitting on the front porch of the house when three men, including Stewart and William Baxter [(Baxter)], walked by and spoke with them.

After the three men walked past, T.R. entered her friend's house, but then left to return to her house as she had to work later that day. The other people at her friend's house advised her against walking in that neighborhood at such a late hour. As T.R. walked home, she came across Stewart, Baxter, and a third man, who called her cute and propositioned her with drugs. The men approached T.R., asked for her name, continued to

2

call her cute, and told her their nicknames. Stewart asked T.R. to hang out with the three men. When T.R. responded that she only wanted to walk home, Stewart informed her that they would walk with her.

While walking with T.R., Stewart pulled out a bag of cocaine, persuaded T.R. to use some, scooped a small amount of the cocaine out of the bag using a driver's license that had "Stewart" on it, and all four of them consumed some of the cocaine. The four stopped behind an abandoned house when Stewart said "This is the spot." […]. T.R. felt uncomfortable about the situation, but complied when Stewart asked her to come with him as he walked toward the side of the house. Stewart told T.R. that he liked her, kissed her, and she returned the kiss. Stewart pulled his penis out of his pants and told T.R. to touch it, but she refused. The three men became angry with T.R. for using some of their cocaine and demanded payment for it. T.R. attempted to walk away from the three men, but they refused to allow her to walk home without them.

T.R. walked into an alley and was followed by the three men, when one of the men said, "Now." […]. Stewart came up to T.R. from behind and placed his arm around her neck, strangling her. When T.R. said that she would scream for help, one of the men in the group told the others to "[k]nock the bitch out." […]. Stewart and one of the other men began punching T.R. on the back of her head with their fists. T.R. became scared and feared that the men would kill her.

One of the men asked T.R. to remove her pants, but she refused. As one of the men kept watch, the other two forcibly removed T.R.'s pants. The three men then took turns repeatedly penetrating T.R.'s mouth, vagina, and anus, ejaculating in her mouth and vagina. T.R. cried and begged the men to stop. Ultimately, the third man told the other two to go. The men took T.R.'s cell phone and house keys, and threatened to kill her if she told the police. When T.R. asked them to return her keys, Stewart told her to shut up and punched her in the mouth, causing her to bleed profusely.

After the men left, T.R. struggled to her feet, dressed, and walked to find help. Larrenquai Bailey [(Bailey)], who lived in the area, heard someone crying for help and helped T.R. Earlier, Bailey had heard what sounded like a fist hitting someone and heard a woman cry, "Please don't do that." […]. The police were summoned to Bailey's house.

Indianapolis Metropolitan Police Officer Mark Decker [(Officer Decker)] arrived at Bailey's house at approximately 6:49 a.m. and observed

3

T.R. bleeding profusely from her mouth. He noted that her clothes were disheveled and torn and that T.R. had blood all over her hands and face. T.R. told Officer Decker that she had been raped and asked that he take her away from there because she feared that her attackers were still watching her. T.R. was taken to Wishard Hospital where she was examined, treated, and a sexual assault kit was completed.

T.R.'s injuries inflicted by her attackers included bumps on her head, scratches, a lost tooth, pain in her vagina, and wounds requiring plastic surgery. […].

Forensic lab testing found semen on T.R.'s pants and matched other semen stains to Stewart's and Baxter's DNA. Based on that information, officers prepared a photo array containing photos of Stewart and Baxter. T.R. identified Stewart and Baxter as two of the three men who assaulted her.

*Stewart v. State*, No. 49A04-0905-CR-462, slip op. at 1-3 (Ind. Ct. App. Jan. 11, 2010).

On November 6, 2008, the State filed an Information charging Stewart with

two counts of rape, four counts of criminal deviate conduct, and one count of robbery, each as a Class A felony, one count of battery and one count of criminal confinement, each as a Class C felony, and one count of strangulation and one count of theft, each as a Class D felony.

*Id*. at *2. On February 4, 2009, the omnibus date, the State sent a plea offer to Stewart. The plea offer stated that the State would forego filing a habitual offender enhancement in exchange for Stewart pleading guilty to one Class A felony. Stewart's attorney reviewed the plea offer with Stewart, who rejected it. On March 5, 2009, the State filed its notice of intention to file a habitual offender enhancement. The notice stated that the State would file the habitual offender enhancement "if good faith plea negotiations are unsuccessful." (Direct Appeal App. p. 57).

4

On April 15-16, 2009, a bifurcated jury trial was held. Before trial commenced, the State filed an additional Information alleging that Stewart was a habitual offender, Ind. Code § 35-50-2-8. Stewart's trial counsel objected, arguing that the filing was untimely as it was filed more than ten days past the omnibus date. On April 16, 2009, the trial court held additional argument. Stewart's counsel pointed out that, "I'm not arguing surprise, I'm just arguing compliance with the statute." (Direct Appeal Transcript p. 415). Following additional discussion, the State asserted that with a belated habitual offender amendment, "the appropriate […] remedy [is] a continuance, and it was not asked for." (Direct Appeal Tr. p. 413). Stewart's counsel disagreed, stating that "I don't think that is the proper remedy." (Direct Appeal Tr. p. 413). Eventually, the trial court allowed the State to file the additional Information over Stewart's objection. Stewart did not ask for a continuance. Later that day, the jury found Stewart guilty as charged. The trial court proceeded with the habitual offender phase and found Stewart to be a habitual offender. On May 1, 2009, the trial court sentenced Stewart to a total of 84 years at the Department of Correction.

Stewart appealed, arguing that the evidence was insufficient to support his convictions and that his sentences violated the prohibition on double jeopardy. On January 11, 2010, we affirmed his conviction, finding no error. *See Stewart v. State*, No. 49A04-0905-CR-462 (Ind. Ct. App. Jan. 11, 2010). On December 17, 2010, Stewart filed a petition for post-conviction relief. On December 22, 2011, the State filed its answer asserting waiver as a defense. On January 24, 2012, Stewart filed an amended

petition alleging that the trial court committed "plain and fundamental error" by permitting the State's belated filing of the habitual offender enhancement. (Appellant's App. p. 57). Stewart also alleged the ineffective assistance of trial and appellate counsel "to the extent that trial counsel should have requested an otherwise unnecessary continuance in the case in order to adequately preserve for direct appeal the issue of the trial court's error in allowing the State to file an impermissibly late habitual offender allegation against Stewart." (Appellant's App. p. 57). On September 7, 2012, the post-conviction court denied post-conviction relief. It concluded that Stewart's claim regarding the late filing of the habitual offender allegation was a free-standing claim and that neither Stewart's trial or appellate counsel were ineffective.

Stewart now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Standard of Review*

We first review the applicable standard of review for post-conviction relief. The preponderance of evidence standard applies when determining whether the petitioner has established his claims to post-conviction relief. Ind. Post-Conviction Rule 1, § 5; *see Henley v. State*, 881 N.E.2d 639, 643 (Ind. 2008). Appeal from a denial of post-conviction relief is equivalent to appeal from a negative judgment. *See Henley*, 881 N.E.2d at 643. To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id*. at 643-44. Where the

6

post-conviction court has entered findings of fact and conclusions of law, findings of fact are accepted unless clearly erroneous, but conclusions of law are accorded no deference. *See id*. at 644.

## II. *Habitual Offender Enhancement*

Stewart argues that the trial court erred by permitting the State to file a habitual offender charge on the first day of trial and more than two months past the omnibus date. Amendments of an indictment or Information are governed by I.C. § 35-34-1-5, which provides, in pertinent part, that:

> [a]n amendment of an indictment or [I]nformation to include a habitual offender charge under [I.C. §] 35-50-2-8 […] must be made not later than ten (10) days after the omnibus date. However, upon a showing of good cause, the court may permit the filing of a habitual offender charge at any time before the commencement of trial.

I.C. § 35-34-l-5(e). Here, the trial court set an omnibus date of February 4, 2009, yet allowed the State to file the habitual offender charge on April 15, 2009.

Issues known and available, but not raised on appeal, are waived. *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001), *cert. denied,* 537 U.S. 839 (2002). "The purpose of post-conviction relief is not to provide a substitute for direct appeal, but to provide a means for raising issues not known or available to the defendant at the time of the original appeal." *Strowmatt v. State*, 779 N.E.2d 971, 975 (Ind. Ct. App. 2002). Here, Stewart's claim of trial court error was clearly available and known at the time of his

7

direct appeal. By failing to raise the issue on direct appeal, Stewart cannot present the issue in post-conviction proceedings.[1]

### III. *Ineffective Assistance of Appellate Counsel*

Stewart also argues that his appellate counsel was ineffective for failing to raise the State's belated filing of the habitual offender allegation. Ineffective assistance of counsel claims are subject to the two prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must establish counsel's deficient performance and prejudice resulting therefrom. *Reed v. State*, 856 N.E.2d 1189, 1195 (Ind. 2006). Counsel's performance (1) must fall below an objective standard of reasonableness in light of professional norms, and (2) but for counsel's failure to meet such norms, the results of the proceedings would have been different. *Johnson v. State*, 832 N.E.2d 985, 996 (Ind. Ct. App. 2005), *trans. denied*. The standard of review for claims of ineffective assistance of appellate counsel is the same as for trial counsel's ineffective assistance. *Fisher v. State*, 810 N.E.2d 674, 676 (Ind. 2004). The defendant must show that appellate counsel was deficient in his performance and that the deficiency resulted in prejudice. *Id.* at 677.

Indiana law recognizes three basic categories for claims of appellate counsel's ineffectiveness: "(1) denial of access to an appeal; (2) waiver of issues; and (3) failure to

---

[1] The State points out that Stewart does not assert that the trial court committed fundamental error. Even if Stewart had alleged fundamental error, we note that free-standing claims of fundamental error are not generally available in post-conviction proceedings. *See Sanders v. State*, 765 N.E.2d 591, 592 (Ind. 2002).

8

present issues well." *Id*. at 677 (citing *Biehgler v. State*, 690 N.E.2d 188, 193-95 (Ind. 1997), *cert. denied*, 525 U.S. 1021 (1998)). Here, Stewart's claim falls into the waiver of issues category.

There is the "strongest presumption" of effective appellate advocacy in the face of allegations of failure to raise a claim. *Ben-Yisrayl v. State*, 738 N.E.2d 253, 260 (Ind. 2000), *cert. denied*, 534 U.S. 1164 (2002). Our supreme court has provided the analysis to evaluate the effectiveness of appellate counsel's performance in this context: (1) the significance and obviousness of the unraised issue, and (2) the strength of raised issues as compared to the unraised issues. *Reed*, 856 N.E.2d at 1195. However, no deficient performance will be found where appellate counsel's election of issues presented was reasonable in light of the facts of the case. *Id*. Thus, to prevail in such claim in post-conviction proceedings, it is not enough to show that appellate counsel did not raise some potential issue; instead, the defendant must show that the issue was one which a reasonable attorney would have thought availing. *Hampton v. State*, 961 N.E.2d 480, 491 (Ind. 2012). Appellate advocacy is not ineffective for failure to present a meritless claim. *Stowers v. State*, 657 N.E.2d 194, 200 (Ind. Ct. App. 1995), *trans. denied*.

We conclude that Stewart did not receive ineffective assistance of appellate counsel because his challenge to the belated filing of the habitual offender charge was not preserved for appellate review. Our supreme court held in *White v. State*, 963 N.E.2d 511, 518 (Ind. 2012), that a defendant waives his claim that the State untimely filed an

9

habitual offender charge when he fails to object and request a continuance. The *White* court stated:

> Under the facts of this case, this issue has not been preserved for appellate review. This [c]ourt's precedent has consistently held that a defendant must request a continuance after a trial court permits a tardy habitual-offender filing to preserve the issue for appeal. This rule, as stated in *Kidd* [*v. State*, 738 N.E.2d 1039 (Ind. 2000).], has no exceptions. […]. We believe this conclusion comports with the general waiver principle that "[a] party may not sit idly by and permit the court to act in a claimed erroneous matter and then attempt to take advantage of the alleged error at a later time." *Hensley v. State*, [244 N.E.2d 225, 228 (Ind. 1969)].
>
> Had White requested a continuance and had the record continued to remain silent on the issue of "good cause" we would reach a different conclusion. […].
>
> Ultimately, to preserve this issue for appeal, a defendant must request a continuance after a trial court permits a tardy habitual-offender filing. But once a defendant requests a continuance, the burden lies with the State to make a showing of good cause to the trial court, and such a showing should be reflected in the record.

*Id*. at 517-18.

Although his trial counsel objected to addition of the habitual offender allegation, Stewart did not request and even refused a continuance. *White* made clear that the rule requiring a continuance to preserve the trial court's ruling for appeal "has no exceptions." *Id*. at 518. Thus, because Stewart did not request a continuance in the face of the State's belated filing, we conclude that his appellate counsel was not ineffective for electing not to challenge it on direct appeal. *See Hampton*, 961 N.E.2d at 495.

## CONCLUSION

10

Based on the foregoing, we conclude that Stewart waived appellate review of his claim that the trial court erred in permitting the State to belatedly amend the Information to include a habitual offender allegation. Further, we conclude that Stewart did not receive ineffective assistance of appellate counsel.

Affirmed.

BRADFORD, J. and BROWN, J. concur