**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**PHILIP R. SKODINSKI**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RODNEY D. MOSBY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A04-1209-CR-469 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable John M. Marnocha, Judge
Cause No. 71D01-1205-FB-58

**May 17, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Devante Williams was robbed at gunpoint by Terrell Howard of almost $400.00 while Appellant-Defendant Rodney Mosby sat on a couch nearby. Mosby advised Williams to give Howard everything lest he make the situation worse or get himself hurt. After Howard pistol-whipped Williams, Williams dropped all of his cash on the ground and left. Howard and Mosby left together and attempted to flee when they were spotted by police. When the duo was apprehended, Howard was in possession of $378.00, and Mosby, $100.00. Mosby was convicted of Class B felony robbery and Class A misdemeanor resisting law enforcement. Mosby contends that the State produced insufficient evidence to sustain his robbery conviction, the trial court abused its discretion in refusing to admit certain testimony, and the trial court committed fundamental error by mentioning the Aurora, Colorado shootings[1] during *voir dire*. Because we find no legal error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

On the morning of May 1, 2012, Williams withdrew $400 from an ATM, stopped at a 7-11 for cigarettes and a drink, and went to a friend's South Bend house. Orlando, another friend of Williams's, was supposed to be going to court that day, and Williams planned to meet him at the house and give him money to help make bail. When Williams arrived, he found only Mosby and Howard, both in the downstairs living room. Howard told Williams that Orlando had already gone to court, and Williams left. As Williams walked away from the house, Howard yelled at him to return, saying that Orlando was on the telephone.

---

[1] On July 20, 2012, twelve persons were killed and fifty-eight wounded when a gunman opened fire in an Aurora, Colorado movie theater.

Williams returned to find Howard on the stairs and Mosby lying on a couch. Howard handed Williams the telephone, walked past him, slammed the door shut, put a handgun to Williams's head, and demanded that he "come off everything[,]" which Williams understood as a demand that he hand over anything of value. Howard handed the telephone to Mosby, saying, "Hey, Bro, come on, take the phone." Tr. p. 177. Mosby said, "Just give him everything, so you won't make it a worser [sic] situation or get yourself hurt." Tr. p. 180 ([sic] in transcript). When Williams did not initially comply with Howard's demands, Howard struck him on the head with the grip of the handgun. Williams threw all of his cash on the ground, and Howard ordered him to leave.

A neighbor saw three men on the porch, and heard one of them say, "You hit me in the head, and now you took my money." Tr. p. 209. Williams called police and said that he had been robbed by two men. As Mosby and Howard walked away from the house, the neighbor overheard one say to the other, "Oh, he ain't going to do nothing." Tr. p. 215. South Bend Police Officer James Dennin soon arrived and observed Mosby and Howard walking in an alley. When Officer Dennin identified himself as a police officer and yelled at the duo to stop, they turned, looked, and ran off down the alley. When Mosby and Howard were apprehended soon thereafter, Mosby had $100.00 on his person and Howard had $278.00.

On May 2, 2012, the State charged Mosby with Class B felony robbery with a deadly weapon, Class B felony robbery causing bodily injury, and Class A misdemeanor resisting law enforcement. Mosby's trial began on July 31, 2012. During *voir dire*, the trial court said the following to the prospective jurors:

3

THE COURT: In Counts I and II, let me explain a little bit about the law. And I think it's kind of a topic at this point, because I got a lot of questions from people yesterday concerning the murders in Aurora, Colorado. You will recall if you've been watching the news, there were twelve people that were killed in that situation.

But the authorities, the State in Colorado, charged twenty-four counts of murder, one [sic] for each victim in the case.

And here you have a situation where there is alleged one robbery and one victim, but there are two counts that are charged.

I can tell you that the State is entitled to charge alternate theories of criminal liability. And in this case, Count I, is Robbery, as a B Felony, because it's alleged that there was a firearm that was used. Then Count II, is Robbery, as a Class B Felony, because it is alleged that bodily injury resulted.

And so the State is allowed to do that, and juries are allowed to decide whether the State has proved each of those cases.

So in situations like this or in any other case where there are alternative theories, those alternative theories are allowed to go to the jury. And the jury could find the person guilty on both counts or not guilty on both counts, or guilty on one and not guilty on the other.

But whether judgments of convictions could be entered on both counts, let's say you find a person guilty on both counts, that's something that I deal with as a matter of law. Because a person cannot be twice convicted of the same crime.

But's that's not a jury issue, that's a judge issue.

Does everyone understand that?

(Whereupon, all the veniremen indicate affirmatively.)

Tr. pp. 21-22 ([sic] in transcript).

During trial, Howard testified on Mosby's behalf. Howard testified that no robbery had taken place but that Williams had come to the house looking for drugs, which led to a scuffle when Howard refused to provide any. Mosby testified that he had been awakened by Howard yelling at Williams, "You have to go, Bro, you have to go." Tr. p. 352. When Mosby attempted to testify that Williams had replied, "That's f***ed up[,]" the trial court sustained the State's hearsay objection. Tr. p. 352. The jury found Mosby guilty as charged,

4

and the trial court entered judgment of conviction on counts I and III and sentenced Mosby to an aggregate sentence of fifteen years of incarceration.

## DISCUSSION

### I. Whether the State Produced Sufficient Evidence to Sustain Mosby's Burglary Conviction

When reviewing the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is the factfinder's role to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id*. We consider conflicting evidence in the light most favorable to the trial court's ruling. *Id*. We affirm the conviction unless no reasonable fact-finder could find that the elements of the crime were proven beyond a reasonable doubt. *Id*.

Mosby contends only that the State produced insufficient evidence to establish that he and Howard worked in concert to rob Williams. In order to convict Mosby as charged, the State was required to show that he "knowingly or intentionally aid[ed], induce[d], or cause[d]" Howard to "take[] property from [Williams] by using or threatening the use of force on any person … or … by putting any person in fear … while armed with a deadly weapon[.]" Ind. Code §§ 35-42-5-1; 35-41-2-4.

> Factors considered by the fact-finder to determine whether a defendant aided another in the commission of a crime include: (1) presence at the scene of the crime; (2) companionship with another engaged in a crime; (3) failure to oppose the commission of the crime; and (4) the course of conduct before, during, and after the occurrence of the crime.

*Wieland v. State*, 736 N.E.2d 1198, 1202 (Ind. 2000).

5

We conclude that the State produced sufficient evidence to sustain Mosby's robbery conviction, as there is ample evidence that he and Howard were working together. Mosby was at the scene and did not oppose the robbery. The evidence most favorable to Mosby's conviction also establishes companionship and behavior consistent with working with Howard. After Howard put his handgun to Williams's head, Mosby took the telephone from Howard, who referred to Mosby as "Bro." Tr. p. 177. Mosby then advised Williams to give Howard everything so that he would not make the situation worse or get himself hurt. This statement can be interpreted as indicating a knowledge of Howard's intentions, further evidence of the two working together. After the robbery, Howard and Mosby walked from the house together, and one said to the other, "Oh, he ain't going to do nothing." Tr. p. 215. When apprehended, Howard had $278.00 on his person and Mosby had $100.00, suggesting that they split the almost $400.00 stolen from Williams. Finally, when spotted by police and told to stop, both Mosby and Howard attempted to flee, which can be circumstantial evidence of a guilty conscience. *See, e.g.*, *Abercrombie v. State*, 478 N.E.2d 1236, 1240 (Ind. 1985). Mosby's argument in this regard amounts to an invitation to reweigh the evidence, which we will not do.

## II. Whether the Trial Court Abused its Discretion in Not Admitting Certain Evidence

The admissibility of evidence is within the sound discretion of the trial court. *Curley v. State*, 777 N.E.2d 58, 60 (Ind. Ct. App. 2002), *trans denied*. We will reverse a trial court's decision on the admissibility of evidence only upon a showing of an abuse of that discretion. *Id*. An abuse of discretion may occur if the trial court's decision is clearly against the logic

6

and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id.* The Court of Appeals may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though it was not the reason enunciated by the trial court. *Moore v. State*, 839 N.E.2d 178, 182 (Ind. Ct. App. 2005), *trans. denied.* We do not reweigh the evidence, and consider the evidence most favorable to the trial court's ruling. *Hirsey v. State*, 852 N.E.2d 1008, 1012 (Ind. Ct. App. 2006), *trans. denied.*

Howard testified that a scuffle ensued when Williams came to the house looking for drugs and Howard refused to provide any. Mosby argues that the trial court abused its discretion in refusing to admit his testimony regarding Williams's response to Howard's request that he leave following their scuffle, which was, "That's f***ed up." Tr. p. 352. Mosby contends that this evidence corroborates Howard's version of events. We conclude that even if the trial court abused its discretion in refusing to admit testimony regarding the out-of-court statement, any such abuse was harmless. "Errors in the admission of evidence are to be disregarded as harmless unless they affect the substantial rights of the defendant." *Goudy v. State*, 689 N.E.2d 686, 694 (Ind. 1997). Even if we assume that Williams's statement tends to support Howard's version of events, the jury clearly did not believe Howard, and there is no reason to conclude that this—at best—cumulative evidence would have swayed it. Any abuse of discretion the trial court may have committed can only be considered harmless.

### III.  Whether the Trial Court's Remarks During Voir Dire Amounted to Fundamental Error

Mosby contends that the trial court's *voir dire* reference to the shootings in Aurora, Colorado, to which he did not object, nonetheless constituted fundamental error.

> A claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred. *See, e.g.*, *Trice v. State*, 766 N.E.2d 1180, 1182 (Ind. 2002); *Hayworth v. State*, 904 N.E.2d 684, 694 (Ind. Ct. App. 2009). The fundamental error exception is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006). The error claimed must either "make a fair trial impossible" or constitute "clearly blatant violations of basic and elementary principles of due process." *Clark v. State*, 915 N.E.2d 126, 131 (Ind. 2009). This exception is available only in "egregious circumstances." *Brown v. State*, 799 N.E.2d 1064, 1068 (Ind. 2003).

*Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010).

Mosby has failed to establish that the trial court's statements amounted to fundamental error. The trial court merely used a familiar news story to illustrate the non-controversial legal concept of charging in the alternative. The trial court did not in any way compare Mosby's alleged actions to those committed in Aurora or compare him to James Holmes, the alleged perpetrator in that case. We fail to see, and Mosby does not explain, how such statements could possibly have rendered a fair trial impossible. The trial court's *voir dire* statements did not constitute fundamental error.

The judgment of the trial court is affirmed.

RILEY, J., and BROWN, J., concur.