**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MATTHEW D. ANGLEMEYER**
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LYUBOV GORE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JULIUS J. RICE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1311-CR-552 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marc T. Rothenberg, Judge
The Honorable Shannon Logsdon, Commissioner
Cause No. 49G02-1212-FB-82166

**August 29, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

# CASE SUMMARY

Appellant-Defendant Julius Rice went with Stacey Wilson, to an Indianapolis nightclub for drinks on the evening of December 4, 2012. According to Wilson, the duo had known each other for several years and, at the time, shared a "friends with benefits" relationship. Early the next morning, the pair returned to Rice's house. When Rice asked Wilson if she would spend the night, she declined, but asked if she could use his bathroom. Rice received a telephone call from his girlfriend around this time. When Wilson went downstairs and attempted to put on her shoes and leave, Rice began hitting her in the head with his fist. Rice also pulled some of Wilson's hair out and knocked her down. Rice told Wilson to go to the kitchen, and, as she made her way there, Rice continued to push her down, beat her, and pull her hair. Once in the kitchen, Rice, still on the telephone with his girlfriend on "speaker," positioned Wilson in a corner and retrieved a knife from a drawer, with which he hit Wilson on the top of the head. At some point, Wilson managed to dial 911 and leave the line open, a call during which Rice is heard to say to his girlfriend, "I'm 'bout to O.J. this b****."

Eventually, Appellee-Plaintiff the State of Indiana ("the State") charged Rice with Class B felony criminal confinement, Class D felony criminal recklessness, Class A misdemeanor intimidation, and Class A misdemeanor battery. At trial, forensic nurse Tamara Williams testified regarding statements that Wilson made to her regarding statements Rice had made to Wilson during the incident. Additionally, Wilson testified that Rice's girlfriend indicated at some point that she was upset that Rice and Wilson were together that night. A

2

jury convicted Rice of criminal confinement, criminal recklessness, and battery, and the trial court sentenced him to an aggregate sentence of ten years of incarceration, with six years in the Department of Correction ("DOC"), two years on work release, and two years suspended to probation. Rice contends that the admission of certain testimony by Williams and Wilson amounted to fundamental error requiring reversal. We affirm.

## FACTS AND PROCEDURAL HISTORY

In December of 2012, Rice and Wilson had known each other for several years and had a "friends with benefits" relationship in which they were free to see other persons. On December 4, 2012, Rice and Wilson arranged to meet for drinks at Tiki Bob's, an Indianapolis nightclub, and Wilson collected Rice at his house. The duo arrived at Tiki Bob's at approximately 11:00 p.m. and stayed for approximately three to four hours. While at Tiki Bob's, the duo met a man named Khalib, and Rice agreed to drive Khalib home.

With Rice driving Wilson's car on the way to Khalib's house, Rice asked Wilson if she would stay the night, and Wilson declined. Rice then drove to his house, whereupon he immediately went inside, leaving Khalib and Wilson in the car. Wilson knocked on Rice's door and asked him if he would tell Khalib, who had refused to leave her car, to leave. As the duo approached, they noticed Khalib walking away. Wilson asked Rice if she could use his bathroom before she drove home, and he allowed her to do so.

Wilson went inside, removed her shoes, and went upstairs to the bathroom. As Wilson used the bathroom, Rice came in and brushed his teeth. Rice received a telephone call from his girlfriend, went downstairs, and left the house. When Wilson went downstairs

3

and began to put her shoes back on, Rice came back through the front door and began hitting her with his fist. Rice hit Wilson in the head, knocked her down, and pulled her hair. When Wilson would attempt to leave, Rice would either hit her, push her down, or pull her hair. Rice told Wilson to go the kitchen. As Wilson worked her way to the kitchen, Rice continued to prevent her from standing and continued to hit her in the head, arms, and legs.

Once in the kitchen, Rice, who had been on the telephone with his girlfriend the entire time, positioned Wilson in a corner and continued to hit her in the head. Rice put his girlfriend on speakerphone so that Wilson could hear her as well. Rice retrieved a large knife from a drawer and started hitting Wilson on the top of the head with it. Rice told Wilson to retrieve her telephone from her purse, apparently so that he would determine if Wilson had called his girlfriend earlier, and, while Rice checked her telephone, Wilson used a second telephone to dial 911 without Rice knowing. Wilson left the line open, and in a recording of the 911 call, Rice is heard to tell his girlfriend, "I'm 'bout to O.J. this b****" and to tell Wilson, "shut the f*** up." State's Ex. 1. Rice can also be heard asking his girlfriend if Wilson had called her to tell her that Wilson and Rice were together that night.

Approximately ten minutes after the 911 call was placed, there was a knock on the front door, which Rice left the kitchen to answer. Wilson opened the back door and screamed for help, screams that were heard by Indianapolis Metropolitan Police Officer Ronald Vest. Officer Vest pushed through the gate at the back of the house and found Wilson, who told him that Rice had a knife. Officer Vest ordered Rice to lie face down and handcuffed him. As Rice was being taken to the vehicle dispatched to take him to jail, he

told Wilson, "You'll get yours." Tr. p. 160. Wilson was bleeding on the top her head and there was a hole in her pants and strands of hair on her shirt, which Rice had pulled out of her head.

On December 8, 2012, Wilson was examined by forensic nurse Tamara Williams. Wilson told Williams that Rice had been her assailant and that he told her that "he had better not find a phone number of a certain person in [her] phone or he would butcher her." Tr. p. 107. Wilson also told Williams that "she thought that she was going to die and she was frightened." Tr. pp. 107-08. Wilson had bruising, tenderness, swelling, and abrasions to her left cheek, eye, right neck, upper arm, forearm, anterior chest, left shoulder, right shoulder, both thighs, and left lower leg. Wilson had several areas of traumatic alopecia where her hair had been pulled out. Wilson had a tooth impression pattern on the inside of her left cheek.

On December 10, 2012, the State charged Rice with Class B felony criminal confinement and, on February 14, 2013, with Class D felony criminal recklessness, Class A misdemeanor intimidation, and Class A misdemeanor battery. On July 18, 2013, at trial, Williams testified regarding what Wilson had told her about her fright and what Rice had told Wilson about "butchering" her. During Wilson's testimony, after Wilson explained that Rice had put his conversation with his girlfriend on speaker, the prosecutor asked, "Could you, without saying what was being said, could you get some idea from the conversation that you were hearing about what was going on or what might have upset the defendant?" Tr. pp. 53-54. Wilson responded, "I think she was upset that we were either together that evening or something to do with the phone[.]" Tr. p. 54. The jury found Rice guilty of criminal

5

confinement, criminal recklessness, and battery. On August 6, 2013, the trial court sentenced Rice to ten years of incarceration, with six years executed in the DOC, two years on work release, and two years suspended to probation.

## DISCUSSION

### *Standard of Review*

All three of Rice's specific contentions relate to the admission of certain evidence at trial. In general, the admissibility of evidence is within the sound discretion of the trial court. *Curley v. State*, 777 N.E.2d 58, 60 (Ind. Ct. App. 2002), *trans. denied*. We will reverse a trial court's decision on the admissibility of evidence only upon a showing of an abuse of that discretion. *Id*. An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id*. The Court of Appeals may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though it was not the reason enunciated by the trial court. *Moore v. State*, 839 N.E.2d 178, 182 (Ind. Ct. App. 2005), *trans. denied*. We do not reweigh the evidence, and consider the evidence most favorable to the trial court's ruling. *Hirsey v. State*, 852 N.E.2d 1008, 1012 (Ind. Ct. App. 2006), *trans. denied*. "Errors in the admission of evidence are to be disregarded as harmless unless they affect the substantial rights of the defendant." *Goudy v. State*, 689 N.E.2d 686, 694 (Ind. 1997). "[A]n error in the admission of evidence is harmless if the erroneously admitted evidence is cumulative of other evidence appropriately admitted." *Collins v. State*, 826 N.E.2d 671, 679 (Ind. Ct. App. 2005), *trans. denied*.

6

## I. Whether the Trial Court Abused its Discretion in Admitting Wilson's Testimony Regarding Rice's Girlfriend

Rice contends that the trial court abused its discretion in admitting Wilson's testimony regarding her thoughts on why Rice might have been angry with her the night of the assault. Wilson's response was that Rice's girlfriend seemed upset that Wilson and Rice were together that evening. Rice objected to Wilson's response on the ground that it was inadmissible hearsay, an objection the trial court overruled. Indiana Evidence Rule 801(c) defines hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Quite simply, because Wilson never testified regarding any statement made by Rice's girlfriend, her testimony cannot have been hearsay. The trial court did not abuse its discretion in admitting Wilson's testimony.

## II. Whether Fundamental Error Occurred in the Admission of Other Evidence

Rice also contends it was error to admit certain testimony from Williams, but acknowledges that he did not make any objections to this testimony at trial. As such, Rice must establish that fundamental error occurred.

> A claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred. *See, e.g.*, *Trice v. State*, 766 N.E.2d 1180, 1182 (Ind. 2002); *Hayworth v. State*, 904 N.E.2d 684, 694 (Ind. Ct. App. 2009). The fundamental error exception is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006). The error claimed must either "make a fair trial impossible" or constitute "clearly blatant violations of basic and elementary principles of due process." *Clark v. State*, 915 N.E.2d 126, 131 (Ind. 2009). This exception is

7

available only in "egregious circumstances." *Brown v. State*, 799 N.E.2d
1064, 1068 (Ind. 2003).

*Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010).

## A. The "Butcher" Statement

Rice contends that it was fundamental error to admit Williams's testimony that Wilson told her that Rice said that "he had better not find a phone number of a certain person in [her] phone or he would butcher her." Tr. p. 107. Rice contends that the testimony fatally undermines his testimony that his recorded statement that he was "'bout to O.J. this b****'" was not meant to be taken literally. The State counters that the testimony was admissible pursuant to Evidence Rule 803(4), which provides that a statement that "(A) is made by a person seeking medical diagnosis or treatment; (B) is made for--and is reasonably pertinent to--medical diagnosis or treatment; and (C) describes medical history; past or present symptoms, pain or sensations; their inception; or their general cause" is not excluded by the rule against hearsay.

We agree with the State. Williams testified that she routinely asks her patients who are victims of violence about their relationships with their assailants and whether there were any threats of harm made. Williams also testified that with victims of violent crime, she talks about the emotional and mental, as well as physical, affects that violence can have on their health. Williams testified that it is important to have a patient's history in order to identify her needs and to meet them.

We have little trouble concluding that Wilson's statement that Rice threatened to "butcher" her is admissible: it was made by a person seeking medical treatment, was more

8

than reasonably pertinent to medical diagnosis and treatment, and described her past sensations. Put another way, knowing that Rice had threatened to "butcher" Wilson helped Williams to accurately assesses and appropriately treat any emotional trauma Wilson was suffering. The admission of Williams's testimony regarding Wilson's "butcher" statement was not erroneous. *See Perry v. State*, 956 N.E.2d 41, 50 (Ind. Ct. App. 2011) (concluding that statements of assault victim to forensic nurse regarding the identity of her attacker were, *inter alia*, "relevant to any psychological counseling for domestic abuse").

Even if Williams's testimony was erroneously admitted, however, any error was, at worst, harmless in light of the overwhelming evidence of Rice's guilt. Wilson testified that Rice repeatedly beat her, pulled her hair, and pushed her down and forced her into a corner in his kitchen. Evidence of Wilson's extensive injuries, including cuts, multiple bruises, traumatic alopecia, and teeth marks on the inside of her cheek, was entirely consistent with Wilson's version of the incident. Rice himself testified that he "tussled" with Wilson, punching her in the arm and grabbing and pulling her hair. We conclude that there is very little chance that the admission of Rice's "butcher" statement, even if erroneous, implicated Rice's substantial rights.

### B. Wilson's Statement that She Thought She Was Going to Die

Williams testified that Wilson told her that "she thought that she was going to die and she was frightened." Tr. pp. 107-08. As with Rice's "butcher" statement, we conclude that this testimony was properly admitted under Evidence Rule 803(4). Again, knowing that Wilson feared for her life during the assault helped Williams to accurately assesses and

9

appropriately treat any emotional trauma Wilson was suffering. The admission of Williams's testimony regarding her level of fear was not erroneous. *See Perry*, 956 N.E.2d at 50.

Even if the admission of this testimony was erroneous, it was, at worst, harmless, because it was cumulative of other, properly-admitted evidence. Rice essentially argues that Williams's testimony was the only evidence in the record that Wilson was afraid that Rice would kill her. It is not. Wilson testified that, during the attack, she believed that "something was going to happen" and that her children and mother "flashed before [her]." Tr. p. 57. The 911 call recorded Wilson screaming at least once that Rice was killing her, and Officer Vest testified that he heard Wilson scream, "[h]elp me, he's got a knife, he's trying to kill me." Tr. p. 143. Because the evidence complained of was merely cumulative of other evidence in the record, Rice's argument in this regard must fail. *See Collins*, 826 N.E.2d at 679. Rice has failed to establish fundamental error.

The judgment of the trial court is affirmed.

BARNES, J., and BROWN, J., concur.