## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 30 2017, 10:07 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. O'Connor
O'Connor & Auersch
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Desmond Hayes,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 30, 2017

Court of Appeals Case No.
49A02-1606-CR-1391

Appeal from the Marion Superior Court

The Honorable Marc T. Rothenberg, Judge

Trial Court Cause No.
49G02-1504-F2-11881

**Mathias, Judge.**

[1] Desmond Hayes ("Hayes") was convicted after a jury trial in Marion Superior Court of Level 2 felony burglary, Level 3 felony robbery, and two counts of

Level 3 felony criminal confinement. Hayes was sentenced to a seventeen-year term on the burglary conviction, partly executed and partly suspended, and to concurrent four-year terms on the remaining counts. Hayes now appeals, claiming the trial court abused its discretion by admitting the fruits of a search warrant issued for one of Hayes's social media accounts.

We affirm.

## Facts and Procedural Posture

On the evening of April 3, 2015, Marcellus Adams ("Adams") and Shawn Lee ("Lee"), two young men and lifelong friends, were passing the time together in Adams's apartment on the northwest side of Indianapolis, Indiana. While browsing a social media website, Adams saw one of his connections offering a .40 caliber Smith and Wesson handgun for sale under the username "Brasi LilAntfamila." The user, another young man, was not personally known to Adams, but Adams knew of him by the nickname "Lil Bob." Through private messages exchanged over the website, Adams negotiated the purchase of the gun for $130 and an eighth of an ounce of marijuana. On Lee's behalf, Adams also negotiated the sale of Lee's old cell phone. Adams and Lee awaited "Brasi LilAntfamila" in the apartment.

Around 11:00 p.m., "Brasi LilAntfamila" arrived in the company of another, and both were directed up to the apartment by Adams. As Adams went to open the front door to let them in, the visitors pushed through the door and burst into the apartment. "Brasi LilAntfamila" produced the Smith and Wesson Adams

had planned to buy and pointed it at Adams and Lee; his associate did the same with what appeared to be a large, long-barreled revolver. Adams and Lee were ordered to the ground; Adams was ordered to strip to his underwear; and the two intruders proceeded to rob the apartment of a large television, clothes, hats, cash, marijuana, and Adams's and Lee's cell phones.

[5] "Brasi LilAntfamila" proposed killing Adams and Lee, but his associate refused and left the apartment. "Brasi LilAntfamila" then marched Adams and Lee at gunpoint out of the apartment and down the building's stairs. At an opportune moment, Adams bolted and fled into the night. Lee, resigned, prepared to meet his fate in the parking lot before the robbers' waiting car. "Brasi LilAntfamila" turned Lee around, struck him in the back of the head several times with the butt of his gun, and fled in the car.

[6] Around this time, an officer of the Indianapolis Metropolitan Police Department ("IMPD") was nearby investigating a report of a suspicious person prowling about the back yard of a home. The officer saw Lee in the parking lot where the robbers had left him; Lee relayed the substance of the night's events to the officer. More IMPD officers and a robbery detective, Rodney Bradburn ("Bradburn"), were dispatched to the scene and arrived shortly after. Adams soon returned to the apartment as well. Adams, now without his cell phone, borrowed one of the officers' and showed Bradburn the social media account of "Brasi LilAntfamila." The profile picture associated with the account matched the appearance of the man who had just robbed the apartment.

Around 2:00 a.m. the following morning, April 4, 2015, on the west side of Indianapolis, an IMPD patrol officer pulled over a sedan for having license plates registered to an SUV. In the front passenger's seat sat Hayes. As the officer approached the driver's window, he saw a glass jar full of marijuana in the center console between the two front seats. The officer ordered Hayes, the driver, and a second passenger out of the car, and the butt of what appeared to be a large, long-barreled revolver — but was actually a revolver-style BB gun — protruded from between the center console and the now-vacant driver's seat. The officer radioed for help; a second officer arrived quickly. The second officer searched the car while the first minded its occupants. A search of the glove compartment produced a second jar of marijuana and a .40 caliber Smith and Wesson handgun. Hayes admitted the marijuana was his but denied owning the handgun. Hayes was arrested. A search incident to that arrest produced one .40 caliber round from his pants pocket.

Bradburn, meanwhile, began investigating "Brasi LilAntfamila." The user's social media account listed a birthday. Bradbury was able to match the birthday and the account's profile picture to a suspect who shared the same birthday and the same appearance: Hayes. On April 4 and 6, 2015, Bradburn presented first Adams and then Lee with a six-person photo array, showing a previously taken picture of Hayes together with five others. Both Adams and Lee identified Hayes as "Brasi LilAntfamila" and the robber. Bradburn then sought and obtained a search warrant directed at the social media website for Hayes's account. The fruits of that search included Hayes's original post advertising the

handgun for sale; a log of the messages sent by Adams and Hayes as they negotiated the sale of the handgun and Lee's cell phone; and a picture taken and uploaded around 11:45 p.m., April 3, 2015, showing a wad of cash, a handgun, two cell phones, and a glass jar of marijuana with the caption, "I got six jobs IDGT."[1] Ex. Vol., State's Ex. 17.

[9] On April 6, 2015, the State charged Hayes by information filed in Marion Superior Court with one count of Level 2 felony burglary, two counts of Level 3 felony robbery, and two counts of Level 3 felony criminal confinement. On May 16, 2016, Hayes moved to suppress the fruits of the search warrant. The court denied the motion after hearing brief argument. Hayes was tried before a Marion County jury over two days, from May 16, 2016, to May 17, 2016. Fruits of the warrant were admitted without objection. The jury found Hayes guilty as charged on all counts.

[10] On June 1, 2016, the court merged the two robbery counts and entered judgment against Hayes for burglary, robbery, and two counts of criminal confinement. Hayes was sentenced to a seventeen-year term for burglary: seven years executed in the Department of Correction, four years executed in Marion County Community Corrections, and six years suspended with one year on

---

[1] A witness for the State testified that "IDGT" stood for "I don't got time." Tr. p. 258. In the context of Hayes's social media username, it more likely stood for "I don't get tired." *See* Kevin Gates, *I Don't Get Tired*, *on* Luca Brasi 2 (Atlantic Records 2014) ("I got six jobs, I don't get tired.").

probation. On each of the three remaining counts, the court imposed four-year terms concurrent to the first.

[11] Hayes now appeals, claiming the trial court abused its discretion by denying his motion to suppress the fruits of the search warrant because the warrant was unsupported by probable cause.

## Discussion and Decision

[12] Our review of denials of motions to suppress, when following a trial at which the challenged evidence was admitted, is properly a review of the trial court's decision to admit the evidence. *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014). This decision is not subject to review for abuse of discretion unless contemporaneous objection was made at trial, irrespective of any pretrial motion to suppress. *Jackson v. State*, 735 N.E.2d 1146, 1152 (Ind. 2000). Hayes did not object at trial to the admission of any of the warrant's fruits. Hayes's claim on appeal was therefore waived unless he alleges fundamental error. *Trice v. State*, 766 N.E.2d 1180, 1182 (Ind. 2002).

[13] Our supreme court has held that "a claim [for error in admitting unconstitutionally obtained evidence at trial], without more, does not assert fundamental error." *Brown v. State*, 929 N.E.2d 204, 205 (Ind. 2010). Errors are fundamental only where they "make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process." *Id.* at 207 (internal citation and quotation omitted). With respect to Fourth Amendment protections, erroneous denial of these protections is fundamental only when

coupled with a "claim of fabrication of evidence," "willful malfeasance," or a "contention that the evidence is not what it appears to be." *Id.*

Hayes does not allege fabrication, willful malfeasance, or "that the evidence [was] not what it appear[ed] to be." *Id.* Hayes therefore cannot allege fundamental error under *Brown*. Having waived review for abuse of discretion, and unable to assert fundamental Fourth Amendment error, Hayes's claim on appeal fails at the threshold. Even had Hayes crossed it, he would have faced the heavy burdens of showing a protectable privacy interest in his social media activity, *see United States v. Jones*, 565 U.S. 400, 417-18 (2012) (Sotomayor, J., concurring) (discussing vitality of third-party doctrine in "the digital age"), overcoming the "great deference" we owe a magistrate's probable cause determinations, *Illinois v. Gates*, 462 U.S. 213, 236 (1983), and avoiding the application of *United States v. Leon*, 468 U.S. 897, 920 (1984) (good-faith exception to exclusionary rule).

# Conclusion

Hayes waived abuse-of-discretion review of the trial court's evidentiary ruling by failing contemporaneously to object, and cannot allege fundamental error. The judgment of the trial court is therefore affirmed.

Affirmed.


Baker, J., and Pyle, J., concur.